1  Henry S. David (SBN 89297)
2  hdavid@davidfirm.com
   Hayim M. Gamzo (SBN 307033)
3  hgamzo@davidfirm.com
   THE DAVID FIRM®
4  617 W. 7th St., Suite 702
5  Los Angeles, CA  90017
   Telephone:  (213) 550-4020
6
7  Andrew F. Kim (SBN 156533)
   akim@afklaw.com
8  Law Office of Andrew F. Kim, Esq., P.C.
9  9018 Balboa Boulevard, Suite 552
   Northridge, CA 91325
10 Telephone:   (818) 216-5288
11 Attorneys for Plaintiffs HOWARD L.
12 ABSELET and ISRAEL ABSELET

13          **UNITED STATES DISTRICT COURT**
14          **CENTRAL DISTRICT OF CALIFORNIA**

15 HOWARD L. ABSELET, an individual; and    CASE NO.
16 ISRAEL ABSELET, an individual,
                                            **COMPLAINT (1) TO QUIET**
17                         Plaintiffs,       **TITLE (TWO COUNTS); AND**
                                            **(2) FOR CONSPIRACY TO**
18        vs.                               **CHILL BIDDING**

19 ELKWOOD ASSOCIATES, LLC, a
20 California limited liability company;
   FIELDBROOK, INC., a California
21 corporation; RELIABLE PROPERTIES, a
   California corporation; J.P. MORGAN
22 CHASE BANK, N.A., a national banking
   association; FEREYDOUN DAYANI, an
23 individual; SODA PARTNERS, LLC, a
24 California limited liability company;
   DMARC 2007-CD5 GARDEN STREET,
25 LLC, a Delaware limited liability company;
26 JACK NOURAFSHAN, an individual;
   CITIVEST FINANCIAL SERVICES, INC.,
27 a Nevada corporation; JOHN MALAKZAD,
28 an individual; NOOSHIN MALAKZAD, an

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

---
- 1 -
**COMPLAINT TO QUIET TITLE ETC.**

individual; J.P. MORGAN CHASE
CUSTODY SERVICES, INC., a Delaware
corporation; QUALITY LOAN SERVICE
CORPORATION, a California corporation;
DAVID K. GOTTLIEB, as trustee of the
bankruptcy estates of Massoud Aaron
Yashouafar and Solyman Yashouafar; and
DOES 1 through 50, inclusive,

Defendants.

Plaintiffs Howard L. Abselet ("Howard[1]") and Israel Abselet ("Israel," and together with Howard, "Plaintiffs") allege for their Complaint as follows:

## I.

## JURISDICTION AND VENUE

1.     This Court has, and may exercise, original subject matter jurisdiction over this matter under its ancillary/supplemental jurisdiction, because Howard brings this action to enforce his rights, and to collect the sums due to him, pursuant to that Second Amended Judgment entered on or about August 10, 2012, as Docket No. 477 in that case entitled Howard L. Abselet v. Allied Lending Group, Inc. et al., Case No. 2:11-cv-00815-JFW(JEMx) in this Court (the "Underlying Action"), and, in particular, to enforce his rights under an abstract of judgment that this Court issued in the Underlying Action and that Howard recorded against the real property that is the subject of this action.

2.     Venue is proper in this District under 28 U.S.C. § 1391(a) because certain of the defendants reside in this District, a substantial part of the events related to the claims occurred within this District, and the real property that is the subject of this action is located in this District.

_____

[1]     Plaintiffs use first names as to certain parties to avoid confusion, not out of disrespect.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

## II.

## PARTIES AND RELEVANT NON-PARTIES

**A.**    **Plaintiffs**

3.     Howard is citizen and a resident of the State of New York and domiciled in Port Jefferson Station, New York.

4.     Israel is a citizen and a resident of the State of New York and domiciled in Port Jefferson Station, New York.

**B.**    **The Yashouafars**

5.     Plaintiffs are informed and believe, and on that basis allege, that Non-Party Solyman Yashouafar ("Solyman") is a citizen and a resident of the State of California and domiciled in this District. Solyman is the debtor in that bankruptcy case entitled In re Solyman Yashouafar, Case No. 1:16-bk-12255-GM, pending in the United States Bankruptcy Court for the Central District of California. Plaintiffs are further informed and believe, and on that basis allege, that Solyman, as trustee of the Solyman and Soheila Yashouafar 2004 Trust dated March 8, 2004 (the "Solyman Family Trust"), was the owner of that real property commonly known as 580 Chalette Drive, Beverly Hills, CA, and more specifically described in Exhibit 1 to this Complaint, which is incorporated in this Complaint as though set forth in full (the "Chalette Home"). Plaintiffs are further informed and believe, and on that basis allege, that Solyman, as trustee of the Solyman Family Trust, remained the owner of the Chalette Home until an order for relief was entered in Solyman's bankruptcy (at which time his bankruptcy estate became the owner of the Chalette Home) because, as alleged below, a purported foreclosure on the Chalette Home, which purported to extinguish the interest of the Solyman Family Trust in the Chalette Home, was void.

6.     Plaintiffs are informed and believe, and on that basis allege, that Non-Party Massoud Aaron Yashouafar ("Massoud") is a citizen and a resident of the

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

State of California and domiciled in this District.  Solyman and Massoud (together, the "Debtors") are brothers.  Massoud is the debtor in that bankruptcy case entitled In re Massoud Aaron Yashouafar, Case No. 1:16-bk-12408-GM, pending in the United States Bankruptcy Court for the Central District of California, which is being jointly administered with Solyman's bankruptcy.  Plaintiffs are further informed and believe, and on that basis allege, that Massoud, as trustee of the Massoud and Parinaz Yashouafar 2003 Trust, u/d/t June 18, 2003 (the "Massoud Family Trust"), was the owner of that real property commonly known as 910 North Rexford Drive, Beverly Hills, California, and more specifically described in Exhibit 2 to this Complaint, which is incorporated in this Complaint as though set forth in full (the "Rexford Home").  Plaintiffs are further informed and believe, and on that basis allege, that Massoud, as trustee of the Massoud Family Trust, remained the owner of the Rexford Home until an order for relief was entered in Massoud's bankruptcy (at which time his bankruptcy estate became the owner of the Rexford Home) because, as alleged below, a purported foreclosure on the Rexford Home, which purported to extinguish the interest of the Massoud Family Trust in the Rexford Home, was void.

**C.**     **The Nourafshan Defendants**

7.     Plaintiffs are informed and believe, and on that basis allege, that Jack Nourafshan ("Nourafshan") is a citizen and a resident of the State of California and domiciled in this District.  Plaintiffs are further informed and believe, and on that basis allege, that Nourafshan is the brother of Massoud's wife Parinaz Yashouafar ("Parinaz"), and hence is Massoud's brother-in-law.

8.     Plaintiffs are informed and believe, and on that basis allege, that Elkwood Associates, LLC ("Elkwood") is a limited liability company formed under the laws of the State of California on or about December 17, 2014, with its principal place of business in Sacramento, California, and doing business in Los Angeles, California.

**COMPLAINT TO QUIET TITLE ETC.**

9.      Plaintiffs are informed and believe, and on that basis allege, that Fieldbrook, Inc. ("Fieldbrook") is a corporation formed under the laws of the State of California, with its principal place of business in Encino, California.

10.     Plaintiffs are informed and believe, and on that basis allege, that Reliable Properties ("Reliable") is a corporation formed and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.

11.     Plaintiffs are informed and believe, and on that basis allege, that some or all of Parinaz's brothers (that is, Massoud's brothers-in-law), including but not limited to Defendant Nourafshan (collectively, the "Nourafshan Family"), own and control Fieldbrook, Elkwood, and Reliable.

**D.    <u>The Other Lienholders</u>**

12.     Plaintiffs are informed and believe, and on that basis allege, that J.P. Morgan Chase Bank, N.A. ("Chase") is a national banking association with its principal place of business in New York, New York.

13.     Plaintiffs are informed and believe, and on that basis allege, that Fereydoun Dayani ("Dayani") is a citizen and a resident of the State of California and domiciled in this District.

14.     Plaintiffs are informed and believe, and on that basis allege, that Soda Partners, LLC ("Soda Partners") is a limited liability company formed under the laws of California, with its principal place of business in West Hollywood, California.  Plaintiffs are further informed and believe, and on that basis allege, that Soda Partners was dissolved on or about November 4, 2013, and that its Articles of Organization were cancelled on or about December 17, 2014.

15.     Plaintiffs are informed and believe, and on that basis allege, that DMARC 2007-CD5 Garden Street, LLC ("DMARC") is a limited liability company formed under the laws of Delaware, doing business in this District.

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

1   Plaintiffs are further informed and believe, and on that basis allege, that DMARC is

2   obligated to qualify to do business in the State of California, but has failed to do so.

3   **D.   Other Parties**

4         16.   Plaintiffs are informed and believe, and on that basis allege, that

5   Citivest Financial Services, Inc. ("Citivest") is a corporation formed under the laws

6   of Nevada, with its principal place of business in Las Vegas, Nevada.  Plaintiffs are

7   further informed and believe, and on that basis allege, that Citivest does business in

8   California, but has not qualified to do business in California.

9         17.   Plaintiffs are informed and believe, and on that basis allege, that

10  Defendants John Malakzad and Nooshin Malakzad (together, the "Malakzads"),

11  and each of them, are citizens and residents of the State of California and domiciled

12  in this District.

13        18.   Plaintiffs are informed and believe, and on that basis allege, that J.P.

14  Morgan Chase Custody Services, Inc. ("Chase Custody Services") is a corporation

15  formed under the laws of Delaware, with its principal place of business in Monroe,

16  Louisiana.

17        19.   Plaintiffs are informed and believe, and on that basis allege, that

18  Quality Loan Service Corporation ("Quality Loan") is a corporation formed under

19  the laws of California, with its principal place of business in San Diego, California.

20        20.   David K. Gottlieb (the "Trustee") is the chapter 11 trustee in the

21  Debtors' bankruptcies (together, the "Bankruptcies").  Plaintiffs are informed and

22  believe, and on that basis allege, that the Trustee and the Debtors each is a citizen

23  and a resident of the State of California and domiciled in this District.

24        21.   Plaintiffs do not know the true names and capacities, whether

25  individual, corporate, associate, or otherwise, of the defendants that Plaintiffs sue in

26  this Complaint as Does 1 through 50, inclusive (collectively, the "Doe Defendants"

27  and collectively with the defendants identified in paragraphs 8 through 20,

28  inclusive, the "Defendants"), and, therefore, sue the Doe Defendants by these

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 6 -

**COMPLAINT TO QUIET TITLE ETC.**

fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe Defendants when Plaintiffs ascertain the true names of the Doe Defendants.  Plaintiffs are informed and believe, and on that basis allege, that the Doe Defendants, and each of them, are responsible in some manner for the acts and omissions that Plaintiffs allege in this Complaint and that the conduct of the Doe Defendants, and each of them, proximately caused Plaintiffs' damages as alleged in this Complaint.  Plaintiffs are further informed and believe, and on that basis allege, that none of the Doe Defendants is a resident or a citizen of the State of New York.

**III.**

**FACTUAL ALLEGATIONS**

**A.**    **Overall Nature of Fraudulent Scheme by the Debtors**

22.    This action arises from a scheme that the Debtors and their close relatives carried out to put the Debtors' assets out of the reach of the Debtors' creditors (including Plaintiffs), by transferring such assets to such Debtors' relatives, the Debtors' companies, and their relatives' companies.  The specific assets that are the subject of this action are the Rexford Home and the Chalette Home (together, the "Homes"), with the acts to cause such transfers occurring in late 2014 and early 2015.  Other assets that the Debtors transferred as part of the same scheme and are the subjects of other litigation pending before this Court include:

(A)    the Debtors' stock in ECP Building, Inc. and their interests in Encino Corporate Plaza, L.P., which stock and interests the Debtors and others purported to transfer in January 2015 and again in July 2015;

(B)    the Debtors' stock in Alliance Property Investments, Inc., which they purported to transfer in March 2014; and

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

(C)     the Debtors' indirect interests in a reserve account that Levene Neale Bender Yoo & Brill, LLP held, which they purported to transfer commencing no later than February 2012 and ending no later than November 2012.

This Court already is presiding over actions regarding such transfers (Case Nos. 15-cv-7625, 15-cv-8570, and 16-cv-6263).

23.     As alleged in greater detail below, the scheme to make the Homes unreachable by the Debtors' creditors included the Debtors and the Debtors' relatives, acting as strawmen for and/or agents of the Debtors:

(A)     buying a loan secured by deeds of trust on the Homes (the "PWB Loan"), and non-judicially foreclosing under such deeds of trust at tainted and defective foreclosures; and

(B)     ensuring, through intentional deceit and concealment, that no one except the relatives themselves (and their companies) would, or could, bid on or buy the Homes at such foreclosures, including

(1)     making the senior liens on the Homes appear to potential bidders to be millions of dollars greater than the senior liens on the Homes actually were, by

(a)     overstating by approximately $5.8 million the balance of the PWB Loan being foreclosed on the Rexford Home in the published notices of the foreclosure sale that California Civil Code section 2924f(b) requires; and

(b)     by not recording reconveyances of the senior deeds of trust before the foreclosures, thereby concealing that a loan secured by senior deeds of trust on both Homes in the original principal amount of $2,000,000 had been satisfied,

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

thus misleading potential unrelated bidders to believe that a bid of more than $8,500,000 would be required to match a "credit bid" at the Rexford Home at foreclosure, instead of the bid of $782,508.05 that actually would have been necessary;

(2) preventing potential unrelated bidders from attending the Rexford Foreclosure Sale by publishing an incorrect and/or materially misleading address in the notices that California Civil Code section 2924f(b) required;

(3) preventing Sina Abselet ("Sina"), the then-holder of the claim that Israel now owns, from bidding at either foreclosure by sending the notices of trustee's sale to which Sina was entitled to Homan Taghdiri ("Taghdiri"), the Debtors' own counsel; and

(4) not giving Howard notice of either sale.

24. Plaintiffs are informed and believe, and on that basis allege, that Nourafshan and the Debtors intended, and knew, that their acts and omissions would result in no one else bidding at the foreclosure sales on the Homes, as demonstrated by, among other things, the fact that they instructed Citivest to bid $782,508.05 at the Rexford Home foreclosure sale with no arrangement to bid any higher amount even though the equity in the Rexford Home over and above that deed of trust exceeded at least $11 million. Plaintiffs are further informed and believe, and on that basis allege, that no one other than Citivest (ostensibly on behalf of Elkwood and Fieldbrook) appeared at the foreclosure sales on the Homes.

**B.  Plaintiffs' Claims and Liens**

25. Sina, Plaintiffs' father, lent $2 million to the Debtors and their companies. In March 2009, that loan was rolled over and redocumented to be a loan to the Debtors and two of their companies (S&R Equities, L.P., and Madison Equities, L.P.), with a then-outstanding principal balance of $1.75 million (the "$1.75M Loan"). The $1.75M Loan was secured by a deed of trust on the Chalette

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

Home (the "$1.75M Chalette DOT"), recorded on or about April 28, 2009, and a deed of trust on the Rexford Home (the "$1.75M Rexford DOT"), recorded on or about April 28, 2009.  Effective September 1, 2016, Sina assigned to Israel the $1.75M Loan and all rights associated with the $1.75M Loan.

26.   On or about August 10, 2012, Howard obtained a judgment against, among others, the Debtors in the Underlying Action (the "Judgment").  To enforce the Judgment, Howard recorded an abstract of judgment in the County of Los Angeles, State of California, on or about August 29, 2012 (the "Abstract of Judgment").  The Abstract of Judgment created a lien in favor of Howard on, among other things, the Homes.

**C.    Chalette Home**

27.   Plaintiffs are informed and believe, and on that basis allege, that Solyman, his wife Soheila Yashouafar ("Soheila"), and, from time to time, some or all of their children lived in the Chalette Home until approximately early 2015.

28.   Plaintiffs are informed and believe, and on that basis allege, that on or about February 7, 2002, Solyman executed and delivered to Soheila a quitclaim deed to the Chalette Home.

29.   Plaintiffs are informed and believe, and on that basis allege, that on or about January 27, 2004, Soheila borrowed approximately $1,475,000 (the "Chase Chalette Loan") from Chase, and, as the purported sole owner of the Chalette Home, granted Chase a deed of trust (the "Chase Chalette DOT") to secure her obligations under the Chase Chalette Loan.  The Chase Chalette DOT was recorded on or about February 13, 2004.   Chase Custody Services is the trustee under the Chase Chalette DOT, and is named in this action solely in its capacity as trustee under that deed of trust.

30.   Plaintiffs are informed and believe, and on that basis allege, that on or about December 27, 2004, Solyman and Soheila executed and delivered to

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

Solyman, as trustee of the Solyman Family Trust, a trust transfer deed to the Chalette Home.

31.   Plaintiffs are informed and believe, and on that basis allege, that:

(A)   at all times relevant, at least until the purported foreclosure described in Paragraph 76 below, Solyman, as trustee of the Solyman Family Trust, owned the Chalette Home; and

(B)   if that purported foreclosure on the Chalette Home was void, Solyman, as trustee of the Solyman Family Trust, owned the Chalette Home until the order for relief was entered in Solyman's bankruptcy, at which time, the estate of that bankruptcy became the owner of the Chalette Home.

32.   Plaintiffs are informed and believe, and on that basis allege, that:

(A)   on or about March 20, 2009, Massoud and Solyman executed a promissory note in favor of PWB in the original principal amount of $6,551,575 (the "PWB Note"); and

(B)   the repayment obligations under the PWB Note were secured by a deed of trust against the Chalette Home (the "PWB Chalette DOT"), and a deed of trust against the Rexford Home (the "PWB Rexford DOT").  Plaintiffs attach a true copy of the PWB Chalette DOT as Exhibit 3 to this Complaint, and a true copy of the PWB Rexford DOT as Exhibit 4 to this Complaint.  The PWB Chalette DOT and the PWB Rexford DOT each were recorded on or about March 25, 2009.

33.   Plaintiffs are informed and believe, and on that basis allege, that on or about October 1, 2010, Solyman, as trustee of the Solyman Family Trust, executed and delivered a deed of trust in favor of Dayani (the "Dayani Chalette DOT"), which secured repayment of a loan in the original principal of $1.1 million.

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 11 -

**COMPLAINT TO QUIET TITLE ETC.**

Plaintiffs are further informed and believe, and on that basis allege, that the Dayani DOT was recorded on or about December 7, 2010.

34. Plaintiffs are informed and believe, and on that basis allege, that on or about June 13, 2011, Soda Partners recorded an abstract of judgment against the Debtors in Los Angeles County, and on or about June 20, 2011, Soda Partners recorded a second abstract of judgment against the Debtors in Los Angeles County. Plaintiffs are further informed and believe, and on that basis allege, that those abstracts of judgment (together, the "Soda Partners Abstracts of Judgment") created a lien in favor of Soda Partners on, among other things, the Chalette Home.

35. Plaintiffs are informed and believe, and on that basis allege, that on or about September 26, 2014, DMARC recorded an abstract of judgment against the Debtors in Los Angeles County. Plaintiffs are further informed and believe, and on that basis allege, that that abstract of judgment (the "DMARC Abstract of Judgment") created a lien in favor of DMARC on, among other things, the Chalette Home.

**D.    Rexford Home**

36. Plaintiffs are informed and believe, and on that basis allege, that Massoud, his wife Parinaz, and, from time to time, some or all of their children lived in the Rexford Home at least until the Summer of 2017.

37. Plaintiffs are informed and believe, and on that basis allege, that:

(A)    at all times relevant, at least until the purported foreclosure described in Paragraph 77 below, Massoud, as trustee of the Massoud Family Trust, owned the Rexford Home; and

(B)    if that purported foreclosure on the Rexford Home was void, Massoud, as trustee of the Massoud Family Trust, owned the Rexford Home until the order for relief was entered in Massoud's bankruptcy, at which time, the estate of that bankruptcy became the owner of the Rexford Home.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

38.     Plaintiffs are informed and believe, and on that basis allege, that on or about January 2, 2004, Massoud and Parinaz borrowed approximately $2,516,300 (the "Chase Rexford Loan") from Chase, and granted Chase a deed of trust (the "Chase Rexford DOT") to secure their obligations under the Chase Rexford Loan. The Chase Rexford DOT was recorded on or about January 16, 2004.  Quality Loan is the trustee under the Chase Rexford DOT, and is named in this action solely in its capacity as trustee under that deed of trust.

39.     Plaintiffs are informed and believe, and on that basis allege, that on or about February 5, 2004, Massoud and Parinaz borrowed approximately $2,000,000 (the "Tri-Center Loan") from Tri-Center Group, Inc. ("Tri-Center"), and granted Tri-Center a deed of trust on the Rexford Home to secure their obligations under the Tri-Center Loan (the "Tri-Center Rexford DOT").  The Tri-Center Rexford DOT was recorded on or about February 13, 2004.

40.     Plaintiffs are informed and believe, and on that basis allege, that as alleged above, Massoud, as trustee of the Massoud Family Trust, executed and delivered the PWB Rexford DOT on or about March 20, 2009, which was recorded on or about March 25, 2009.

41.     Plaintiffs are informed and believe, and on that basis allege, that, in June 2011, as alleged above, Soda Partners recorded the Soda Partners Abstracts of Judgment that created liens on, among other things, the Rexford Home.

42.     Plaintiffs are informed and believe, and on that basis allege, that, in September 2014, as alleged above, DMARC recorded the DMARC Abstract of Judgment that created liens on, among other things, the Rexford Home.

43.     Plaintiffs are informed and believe, and on that basis allege, that on or about December 30, 2014, Tri-Center executed, and delivered to Elkwood, a full reconveyance of the Tri-Center Rexford DOT (the "Tri-Center Reconveyance"). Plaintiffs attach a true copy of the Tri-Center Reconveyance as Exhibit 5 to this Complaint.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

44.     Plaintiffs are informed and believe, and on that basis allege, that Elkwood did not record the Tri-Center Reconveyance until July 14, 2015.  Plaintiffs are further informed and believe, and on that basis allege, that Elkwood delayed in recording the Tri-Center Reconveyance for the purpose, and with the intent, of misleading potential bidders at a foreclosure on the Rexford Home into believing that the Tri-Center Loan was still outstanding and secured by the Tri-Center Rexford DOT.  Plaintiffs are further informed and believe, and on that basis allege, that Massoud did not request Tri-Center to record a reconveyance of the Tri-Center Rexford DOT for the purpose, and with the intent, of misleading potential bidders at a foreclosure on the Rexford Home into believing that the Tri-Center Loan was still outstanding and secured by the Tri-Center Rexford DOT, and thereby to assist Elkwood, a company that his relatives owned and controlled and with whom Massoud had an agreement as to the post-foreclosure treatment of the Rexford Home, to have a competitive advantage when Elkwood foreclosed under the PWB Rexford DOT, so that Massoud and his family could continue to reside at the Rexford Home, rent-free, after the purported "foreclosure" on the Rexford Home.

**E.     Notices of Default/Sale under Various Deeds of Trust**

45.     Plaintiffs are informed and believe, and on that basis allege, that:

(A)     on or about April 29, 2013, Chase declared a default under the Chase Chalette Loan, and issued a notice of default under the Chase Chalette Loan and with respect to the Chase Chalette DOT;

(B)     on or about September 20, 2013, Chase declared a default under the Chase Rexford Loan, issued a notice of default under the Chase Rexford Loan and with respect to the Chase Rexford

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

DOT, and commenced foreclosure proceedings against the
Rexford Home;

(C)     Chase initially noticed the trustee's sale under the Chase
Rexford DOT for February 12, 2014, and then for June 11,
2014, and then continued the sale date numerous times; and

(D)     Chase noticed the trustee's sale under the Chase Chalette DOT
for February 26, 2015.

46.     Plaintiffs are informed and believe, and on that basis allege, that on or
about January 22, 2014, PWB declared a default under the PWB Loan recorded
notices of default, and commenced foreclosure proceedings against the Chalette
Home and the Rexford Home under the PWB Chalette DOT and the PWB Rexford
DOT, respectively.

**F.     Sale of the PWB Loan to Elkwood**

47.     Plaintiffs are informed and believe, and on that basis allege, that
throughout the early part of 2014, Massoud worked with both Chase and PWB to
postpone the pending foreclosure proceeding on the Rexford Home and an
anticipated foreclosure proceeding on the Chalette Home.

48.     Plaintiffs are informed and believe, and on that basis allege, that by an
e-mail dated June 3, 2014, Massoud advised PWB that he had:

> . . . approached a few private investors to possibly pay-off PWB
> by taking over the existing note and deed of trust.  As I have
> come close to finalizing a deal, they have inquired about the
> release price for each home.  I appreciate your confirmation that
> PWB will honor the previously agreed ratios shown on the
> attached e-mail."

49.     Plaintiffs are informed and believe, and on that basis allege, that one of
the unidentified "private investors" was Nourafshan.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

50.     Plaintiffs are informed and believe, and on that basis allege, that PWB, like most banks, had a policy that it would not sell loans in default to its borrowers or their families and affiliates.

51.     Plaintiffs are informed and believe, and on that basis allege, that Massoud and Nourafshan did not reveal to PWB that the potential "private investors" were Massoud's relatives.

52.     Plaintiffs are informed and believe, and on that basis allege, that (A) on or about June 11, 2014, Massoud advised PWB that he "was just contacted by the potential private lender that they are finalizing the letter you requested;" and (B) on June 12, 2014, Massoud caused to be delivered to PWB an expression of interest by Kensington Associates, LLC ("Kensington") in purchasing the PWB Loan.  Plaintiffs are further informed and believe, and on that basis allege, that the Nourafshan Family owned, and Nourafshan controlled, Kensington until they cancelled Kensington effective on or about September 19, 2017.  Plaintiffs are further informed and believe, and on that basis allege, in that in that expression of interest, Kensington, through Thelma Guerrero ("Guerrero"), asked whether PWB ". . . is willing to bifurcate the Secured Note into two separate notes, so that one secured note will be secured by the Rexford [Home] (the Rexford Note), and one secured note will be secured by the Chalette [Home] (the Chalette Note)."

53.     Plaintiffs are informed and believe, and on that basis allege, that on or about June 30, 2014, Kensington submitted a letter of intent (the "Kensington Letter of Intent") to purchase the PWB Note for a total purchase price of approximately $5.9 million.  Plaintiffs are further informed and believe, and on that basis allege, that in the Kensington Letter of Intent, Kensington offered approximately $3.7 million "for the portion of the secured note allocated to the Rexford Property and the Rexford Deed of Trust," approximately 62.7% of the purchase price offered, and approximately $2.2 million "for the portion of the Secured Note allocated to the Chalette Property and the Chalette Deed of Trust,"

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

approximately 37.3% of the purchase price offered.  Plaintiffs are further informed and believe, and on that basis alleged, that in late 2014, the Chalette Home was worth approximately $8.5 million and the Rexford Home was worth approximately $12 million to $15 million, approximately 38.6% and 61.4%, respectively, of the combined values of the Homes.

54.     Plaintiffs are informed and believe, and on that basis allege, that after Kensington submitted the Kensington Letter of Intent to PWB, negotiations between PWB and Kensington for the sale of the PWB Note proceeded haltingly. Plaintiffs are further informed and believe, and on that basis allege, that on or about July 22, 2014, Massoud advised PWB that:

> . . .[t]he delay in finalizing this matter has been due to
> seemingly inability to bifurcate the properties.  The Buyer
> already has its committee approval to purchase the portion of
> the Note securing the Rexford [Home] (approximately 63% of
> the loan).  It is trying to complete its due diligence to obtain the
> approval of the Chalette Property as well.  If the Bank is willing
> to bifurcate the properties, the Rexford portion can be done
> immediately.  Otherwise, I request a few more days to
> hopefully obtain the approval to proceed.

55.     Plaintiffs are informed and believe, and on that basis allege, that by an e-mail dated August 7, 2014, PWB (through Rene Garcia ["Garcia"]) advised Guerrero that PWB had only one loan to sell, by which PWB meant that it would not bifurcate the PWB Loan and the collateral for that Loan.

56.     Plaintiffs are informed and believe, and on that basis allege, that by an e-mail dated August 8, 2014, Massoud advised PWB that he was "planning to meet [the potential purchaser] next week to entice them to finalize this transaction."

57.     Plaintiffs are informed and believe, and on that basis allege, that a week later, on or about August 15, 2014, Massoud advised PWB that "I did have a

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

meeting with the potential buyer of the Note this week and I ended up giving up more concessions in the hopes that a deal would be finalized between them and PWB."

58.     Plaintiffs are informed and believe, and on that basis allege, that on or about August 19, 2014, Massoud advised PWB that he was going to "arrange another meeting with the purchaser attempting to reach a resolution."

59.     Plaintiffs are informed and believe, and on that basis allege, that on or about August 29, 2014, Kensington submitted a revised letter of intent (the "Revised Kensington Letter of Intent"), offering to purchase the entire PWB Note for $6.05 million.  Plaintiffs are further informed and believe, and on that basis allege, that subsequent negotiations between Kensington and PWB again proceeded haltingly; and when advised that no agreement had yet been signed, on or about October 6, 2014, Massoud advised PWB that "I have already put a call to the potential note buyer to ensure that everything is going forward."

60.     Plaintiffs are informed and believe, and on that basis allege, that subsequently, PWB and Kensington entered into a Note Sale Agreement (the "Note Sale Agreement") for the sale of the entire PWB Note from PWB to Kensington for a purchase price of $6.05 million, subject to a due diligence contingency, which would expire on October 27, 2014, with a closing to occur no later than ten days later.

61.     Plaintiffs are informed and believe, and on that basis allege, that on or about October 27, 2014, Garcia reported to her superior at PWB that she had received a call "from the prospective buyer earlier requesting until end of year to finalize the purchase of the Yashouafar loan.  When I asked why they needed the time, they said that they are talking to Yashouafar and trying to figure out how he will be able to pay them the note amount."

62.     Plaintiffs are informed and believe, and on that basis allege, that on or about November 4, 2014, PWB and Kensington entered into that certain

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

Amendment No. 1 to Note Sale Agreement (the "Note Sale Amendment"), acknowledging that the due diligence conditions to closing had been satisfied and extending the closing date to December 29, 2014.

63.     Plaintiffs are informed and believe, and on that basis allege, that on or about December 23, 2014, Guerrero sent Garcia an email, in which Guerrero stated that "We are intending to complete the purchase of the loan as we have agreed. However, due to the Holidays, we need until February 12, 2015 so we can settle the grievances and issues with the borrowers amicably."

64.     Plaintiffs are informed and believe, and on that basis allege, that PWB declined the request and subsequent requests to delay or alter the transaction.

65.     Plaintiffs are informed and believe, and on that basis allege, that on or about December 29, 2014, the sale of the PWB Loan closed, but with the PWB Loan being assigned to Elkwood, rather than Kensington, under that certain Note Sale Agreement dated October 1, 2014 and the First Amendment to that Note Sale Agreement dated November 4, 2014.

66.     Plaintiffs are informed and believe, and on that basis allege, that before PWB assigned the PWB Loan to Elkwood, Massoud and Nourafshan agreed that:

(A)     Nourafshan would cause the Nourafshan Family's entities to structure the foreclosures under the PWB Rexford DOT and the PWB Chalette DOT in such a manner as to permit Nourafshan and his Family's entities to be the high bidders at the Foreclosures by credit bidding the amount owed under the PWB Note, but nothing more, even though the combined values of the Rexford Home and the Chalette Home exceeded the balance owing under the PWB Loan by more than $10.5 million;

(B)     Solyman would vacate the Chalette Home so that the Nourafshan entity that purchased the Chalette Home at the

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

foreclosure under the PWB Chalette DOT could quickly sell the Chalette Home for a substantial profit; and

(C)    Nourafshan would "rent" Massoud the Rexford Home for a nominal rent of $25,000 per month, but in fact, Massoud would pay no rent.

**G.    The Foreclosures**

67.    Plaintiffs are informed and believe, and on that basis allege, that on or about January 12, 2015, Elkwood substituted Citivest as the trustee under the PWB Chalette DOT and the PWB Rexford DOT, even though Citivest had very limited experience in nonjudicial foreclosures under deeds of trust in California and was not qualified to do business in California.

68.    On January 27, 2015, Citivest, as trustee under the PWB Chalette DOT, recorded a notice of trustee's sale (the "Chalette Notice of Trustee's Sale"), in which Citivest stated that the unpaid balance of the obligation secured by the Chalette Home was $6,569,508.05 and that the foreclosure sale would take place on February 20, 2015 at 9:30 a.m. Plaintiffs attach a true copy of the recorded Chalette Notice of Trustee's Sale as Exhibit 6 to this Complaint.

69.    On or about the same day, January 27, 2015, Citivest, as trustee under the PWB Rexford DOT, recorded a separate notice of trustee's sale (the "Rexford Notice of Trustee's Sale"), in which Citivest stated that the unpaid balance of the obligation secured by the Rexford Home was $6,569,508.05.  Plaintiffs attach a true copy of the recorded Rexford Notice of Trustee's Sale as Exhibit 7 to this Complaint.  In the Rexford Notice of Trustee's Sale, Citivest stated, among other things, that the foreclosure sale would take place on February 23, 2015, at 9:30 a.m. at the southwest entrance of the United States Post Office located at 222 North Grand Avenue, Los Angeles, California 90012.  There is, however, no United States Post Office located at 222 North Grand Avenue, Los Angeles, California 90012.

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

70.     On or about January 30, 2015, Citivest caused to be published in the Beverly Hills Courier the first of three public notices that California Civil Code section 2924f(b) requires, in which notice Citivest stated the unpaid balance of the obligation secured by the Chalette Home was $6,569,508.05 and that the foreclosure sale of the property would take place on February 20, 2015.

71.     Instead of publishing a combined notice of the trustee's sales of the Rexford Home and the Chalette Home, on or about January 30, 2015, Citivest caused to be published in the Beverly Hills Courier the first of three separate public notices that California Civil Code section 2924f(b) requires, in which notice Citivest stated the unpaid balance of the obligation secured by the Rexford Home was $6,569,508.05 and that the foreclosure sale of the Rexford Home would take place on February 23, 2015.

72.     Plaintiffs are informed and believe, and on that basis allege, that Citivest sent Sina's copies of the Chalette Notice of Trustee's Sale and the Rexford Notice of Trustee's Sale to Taghdiri, counsel for the Debtors.  Plaintiffs are further informed and believe, and on that basis allege, that Citivest sent Sina's copy of the Chalette Notice of Trustee's Sale and the Rexford Notice of Trustee's Sale to Taghdiri, pursuant to the instructions of Nourafshan (ostensibly on behalf of Elkwood and Fieldbrook, but actually on behalf of the Debtors) and/or Debtors, even though those parties knew that Taghdiri was Debtors' general counsel, and that Sina did not and does not know Taghdiri.

73.     Plaintiffs are informed and believe, and on that basis allege, that on or about February 18, 2015, Elkwood executed a assign to Fieldbrook "all of its right, title and beneficial interest in and to that certain Deed of Trust dated March 20, 2009 executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary [i.e., the PWB Chalette DOT] …

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 21 -

**COMPLAINT TO QUIET TITLE ETC.**

Together with the Secured Promissory Note or Notes therein described or referred to [i.e., the PWB Note]" (the "Fieldbrook Assignment").  Plaintiffs attach a true copy of the Fieldbrook Assignment as Exhibit 8 to this Complaint.  As a matter of law the assignment of the PWB Chalette Note "[t]ogether with the Secured Promissory Note or Notes therein described or referred to" effectuated an assignment of (1) the PWB Note and the full amount owed under it and (2) all security for the PWB Note, including, but not limited to, the PWB Chalette DOT and the PWB Rexford DOT.  Plaintiffs are further informed and believe, and on that basis allege, that at the times of the foreclosures described below, Fieldbrook and Elkwood had not split the PWB Note or the PWB Loan between themselves.

74.    Plaintiffs are informed and believe, and on that basis allege, that at all times from and after February 18, 2015, Massoud, as trustee of the Massoud Family Trust, owed Elkwood nothing, and Elkwood had no rights under the PWB Note or the PWB Rexford DOT.

75.    Plaintiffs are informed and believe, and on that basis allege, that because

(A)    at the request of Elkwood, on behalf of the Debtors, Citivest set the foreclosure sale under the PWB Rexford DOT to occur after the Chalette Foreclosure Sale, and

(B)    Nourafshan, on behalf of the Debtors, gave Citivest instructions to make a credit bid of $5,800,000 at the Chalette Foreclosure Sale,

when Citivest filed, served, published and recorded the Rexford Notice of Trustee's Sale, it knew that as of the foreclosure on the Rexford Home, the balance on the PWB Loan would be at least $5.8 million less than the amount stated in the recorded, served, and published Rexford Notices of Trustee's Sale.

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®

LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

76.   Plaintiffs are informed and believe, and on that basis allege, that:

   (A)   on February 20, 2015, at the request of Fieldbrook, on behalf of the Debtors, Citivest, as trustee under the PWB Chalette DOT, held a foreclosure sale of the Chalette Home under that DOT (the "Chalette Foreclosure Sale");

   (B)   Fieldbrook was the only bidder at the Chalette Foreclosure Sale;

   (C)   pursuant to instructions from Fieldbrook, on behalf of the Debtors, Citivest, purportedly on behalf of Fieldbrook, credit bid $5,800,000 as the initial bid, approximately $3.6 million more than the $2.2 million that Kensington had attempted to allocate to the Chalette Home in its negotiations with PWB; and

   (D)   Fieldbrook was the successful bidder at the Chalette Foreclosure Sale, at the purchase price of $5,800,000.

77.   Plaintiffs are informed and believe, and on that basis allege, that

   (A)   on February 23, 2015, at the request of Elkwood, on behalf of the Debtors, Citivest, as trustee under the PWB Rexford DOT, held a foreclosure sale under that DOT (the "Rexford Foreclosure Sale");

   (B)   Elkwood was the only bidder at the Rexford Foreclosure Sale;

   (C)   pursuant to instructions from Elkwood, on behalf of the Debtors, Citivest, purportedly on behalf of Elkwood, credit bid $782,508.05, the full balance then owing to Fieldbrook under the PWB Note, approximately $3 million less than amount that Kensington had allocated to the Rexford Home in its negotiations with PWB and $5.787 million less than the unpaid balance stated in the filed, served, recorded and published Rexford Notices of Trustee's Sale; and

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

(D)     Elkwood was the successful bidder at the Rexford Foreclosure Sale, at the purchase price of $782,508.05.

78.     Plaintiffs are informed and believe, and on that basis allege, that on or about February 25, 2015, Citivest executed and delivered to Fieldbrook a Trustee's Deed Upon Sale for the Chalette Home pursuant to the foreclosure under the PWB Chalette DOT (the "Chalette Trustee's Deed").  Plaintiffs are further informed and believe, and on that basis allege, that on or about February 25, 2015, Citivest also executed and delivered to Elkwood, as the purported high bidder at the foreclosure under the PWB Rexford DOT, a Trustee's Deed Upon Sale for the Rexford Home pursuant to the foreclosure under the PWB Rexford DOT (the "Rexford Trustee's Deed").  The Chalette Trustee's Deed and the Rexford Trustee's Deed were recorded on or about March 6, 2015.  Plaintiffs attach true copies of the Chalette Trustee's Deed and the Rexford Trustee's Deed as Exhibits 9 and 10 to this Complaint, respectively.

79.     Plaintiffs are informed and believe, and on that basis allege, that on or about June 26, 2015, Fieldbrook sold the Chalette Home to the Malakzads for approximately $8,995,000, with a net profit to Fieldbrook of at least $2.6 million.

80.     Plaintiffs are informed and believe, and on that basis allege, that Reliable received the net proceeds of the sale of the Chalette Home.

81.     Plaintiffs are informed and believe, and on that basis allege, that as of February 2015, the fair market value of the Rexford Home was approximately $12 million to $15 million.

82.     Plaintiffs are informed and believe, and on that basis allege, that:

(A)     Elkwood and Massoud executed a lease for the Rexford Home, and claim to have executed such lease in or about March 2015 (although Plaintiffs do not know whether such date is accurate), with Massoud to pay rent of $25,000 per month (the "Lease").

THE DAVID FIRM®

LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 24 -

Plaintiffs attach a true copy of the Lease as Exhibit 11 to this Complaint;

(B)   when Elkwood and Massoud entered into the Lease, Massoud had no ability to pay the rent under the Lease, and through Nourafshan, Elkwood knew that Massoud had no ability to pay the rent under the Lease or to otherwise perform under the Lease;

(C)   Massoud never paid any rent, and no one on his behalf paid any rent, under the Lease or with respect to the Rexford Home; and

(D)   Yet, Elkwood took no action whatsoever to evict Massoud or to otherwise enforce its rights under the Lease.

## The Bankruptcies, the Settlement, and Relief from Stay

83.   Solyman's bankruptcy and Massoud's bankruptcy (together, the "Bankruptcies") were commenced on August 3, 2016.

84.   The commencement of the Bankruptcies gave rise to an automatic stay (under 11 U.S.C. § 362(a)), which enjoined Plaintiffs from taking any action against the Debtors or their property.

85.   The Trustee and Plaintiffs entered into a settlement of various disputes between and among them (the "Settlement").  As part of that Settlement, Plaintiffs were authorized to pursue any and all rights that they would have had with respect to the Homes, the Chalette Foreclosure Sale, and the Rexford Foreclosure Sale (collectively, the "Foreclosure Claims"), as though the Bankruptcies had not been commenced.

86.   The bankruptcy court hearing the Bankruptcies entered an order approving that Settlement and, among other things, granting Plaintiffs relief from the automatic stay to pursue their Foreclosure Claims.  That order became effective October 11, 2017, and is now final.

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

## IV.

## FIRST CLAIM FOR RELIEF

**(By Plaintiffs against Chase, Chase Loan Services, Fieldbrook, Nourafshan, Reliable, Dayani, Soda Partners, DMARC, the Trustee, Citivest, and the Malakzads to Quiet Title to the Chalette Home)**

87.     Plaintiffs reallege and incorporate in this Paragraph each and every allegation contained in Paragraphs 1 through 86, inclusive, of this Complaint.

88.     As of the Chalette Foreclosure Sale, the Fieldbrook Assignment had not been recorded.

89.     Hence, as of the Chalette Foreclosure Sale, Fieldbrook could not exercise the power of sale under the PWB Chalette DOT.

90.     As of (A) the recording of the Chalette Notice of Sale, (B) the Chalette Foreclosure Sale, and (C) the execution and delivery of the Chalette Trustee's Deed, Citivest was not qualified to do business in California.

91.     As a result of the foregoing, the Chalette Foreclosure Sale is void, Citivest was not authorized to execute and deliver the Chalette Trustee's Deed, and any purported transfer of the Chalette Home to Fieldbrook, and Fieldbrook's subsequent sale and transfer of the Chalette Home to the Malakzads are void.

92.     Plaintiffs therefore are entitled to a judicial declaration that

(A)     that Chalette Foreclosure Sale is void;

(B)     that title in the Chalette Home is vested in the Trustee, as trustee of Solyman's bankruptcy;

(C)     that until the order for relief was entered in Solyman's bankruptcy, Solyman, as trustee of the Solyman Family Trust, retained ownership of the Chalette Home despite the Chalette Foreclosure Sale and any purported transfer of the Chalette Home;

- 26 -

(D)   that once the order for relief was entered in Solyman's bankruptcy, ownership of the Chalette Home was transferred to his bankruptcy estate;

(E)   that the liens of Chase, Fieldbrook, Israel, Howard, Dayani, Soda Partners, DMARC, and each of them, against the Chalette Home, remain with the same validity and in that order of priority (the order of priority that they had if the Chalette Foreclosure Sale had not occurred); and

(F)   Of the amount and terms of the liens of Chase, Fieldbrook, Israel, Howard, Dayani, Soda Partners, and DMARC, and each of them, against the Chalette Home; and

93.   Plaintiffs are informed and believe, and on that basis, that Nourafshan caused Fieldbrook to transfer to Reliable the proceeds of the sale of the Chalette Home to the Malakzads.

## V.

## SECOND CLAIM FOR RELIEF

### (By Plaintiffs against Chase, Quality Loan, Elkwood, Fieldbrook, Soda Partners, DMARC, the Trustee, and Citivest to Quiet Title to the Rexford Home)

94.   Plaintiffs reallege and incorporate in this Paragraph each and every allegation contained in Paragraphs 1 through 86, inclusive, of this Complaint.

95.   As of the Rexford Foreclosure Sale, Elkwood had no interest in the PWB Loan, and hence, as a matter of law, no interest in the Rexford DOT.  Hence, Elkwood's purported credit bid at that Foreclosure Sale was a nullity.

96.   As of (A) the recording of the Rexford Notice of Sale, (B) the Rexford Foreclosure Sale, and (C) the execution and delivery of the Rexford Trustee's Sale, Citivest was not qualified to do business in California.

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®

LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

97.     As a result of the foregoing, the Rexford Foreclosure Sale is void, Citivest was not authorized to execute and deliver the Rexford Trustee's Deed, and any purported transfer of the Rexford Home to Elkwood is void.

98.     Plaintiffs therefore are entitled to a judicial declaration that

(A)     that Rexford Foreclosure Sale is void;

(B)     that title in the Rexford Home is vested in the Trustee, as trustee of Massoud's bankruptcy;

(C)     that until the order for relief was entered in Massoud's bankruptcy, Massoud, as trustee of the Massoud Family Trust, retained ownership of the Rexford Home despite the Rexford Foreclosure Sale;

(D)     that once the order for relief was entered in Massoud's bankruptcy, ownership of the Rexford Home was transferred to his bankruptcy estate; and

(E)     that the liens of Chase, Elkwood, Israel, Howard, Soda Partners, and DMARC, and each of them, against the Rexford Home, remain with the same validity and in that order of priority (the order of priority that they had if the Rexford Foreclosure Sale had not occurred).

## VI.

## THIRD CLAIM FOR RELIEF

**(By Plaintiffs against Elkwood, Fieldbrook, Reliable, Nourafshan, and Does 1 through 50, inclusive, for Conspiracy to Chill Bidding)**

99.     Plaintiffs reallege and incorporate in this Paragraph each and every allegation contained in Paragraphs 1 through 86, inclusive, of this Complaint.

100.     Plaintiffs are informed and believe, and on that basis allege, that the Debtors, Nourafshan (through Fieldbrook and Elkwood), and the Doe Defendants

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

conspired to defraud Plaintiffs (as junior lienholders "in the money" on the Chalette Home and the Rexford Home) by taking steps to "chill," or prevent entirely, bidding at the Chalette Foreclosure Sale and the Rexford Foreclosure Sale.

101.   Plaintiffs are informed and believe, and on that basis allege, that Elkwood, Fieldbrook, Reliable, Nourafshan, the Doe Defendants, and each of them, directly and/or through their agents and their co-conspirators, did the acts and things alleged in this Complaint pursuant to, and in furtherance of, such conspiracy. Plaintiffs are further informed and believe, and on that basis allege, that such Defendants' respective involvements include, but are not limited to:

(A)   Elkwood, through Nourafshan, delayed until July 14, 2015 in recording the Tri-Center Reconveyance for the purpose, and with the intent, of misleading potential bidders at a foreclosure on the Rexford Home into believing that the Tri-Center Loan was still outstanding and secured by the Tri-Center Rexford DOT;

(B)   Massoud and Nourafshan agreed that:

(1)   Nourafshan would cause the Nourafshan Family's entities to structure the foreclosures under the PWB Rexford DOT and the PWB Chalette DOT in such a manner as to permit Nourafshan and his Family's entities to be the high bidders at the foreclosure sales without having to bid anything more than the amount of the PWB Loan even though the value of the Chalette Home and the Rexford Home, collectively, far exceeded the amount of the PWB Loan;

(2)   Solyman would vacate the Chalette Home so that the Nourafshan entity that purchased the Chalette Home at

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

the Chalette Foreclosure Sale would quickly sell the Chalette Home for a substantial profit; and

(3)   Nourafshan would "rent" Massoud the Rexford Home for a nominal rent of $25,000 per month, but in fact, Massoud would pay no rent;

(C)   Elkwood and Fieldbrook, through Nourafshan, acted according to such agreement;

(D)   Citivest noticed the Rexford Notice of Trustee's Sale to indicate that the Rexford Foreclosure Sale would occur at a non-existent Post Office;

(E)   Elkwood, Fieldbrook, Nourafshan, Citivest, and Massoud elected not to record the Fieldbrook Assignment before the Chalette Foreclosure Sale;

(F)   Elkwood, Citivest, Nourafshan, and Massoud elected not to record the Tri-Center Reconveyance before the Rexford Foreclosure Sale;

(G)   Elkwood, Fieldbrook, Nourafshan, Citivest, and Massoud elected to state the full balance on the Rexford Notice of Trustee's Sale even though they also noticed the Chalette Foreclosure Sale to occur before the Rexford Foreclosure Sale would occur, and therefore with full knowledge that the balance on the PWB Loan would be substantially less (and, indeed, at least $5,800,000 [the initial, i.e., minimum, bid at the Chalette Foreclosure Sale] less) by the time of the Rexford Foreclosure Sale;

(H)   Elkwood (in the case of the Chalette Notice of Trustee's Sale), Fieldbrook (in the case of the Rexford Notice of Trustee's Sale), Nourafshan, Citivest, and Massoud elected to send the Chalette

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

Notice of Trustee's Sale and the Rexford Notice of Trustee's Sale to Taghdiri, even though they knew that Taghdiri was the Debtors' counsel, not Sina's;

(I)    Reliable received the net proceeds of the Chalette Home, and through Nourafshan, intended to receive such proceeds to defraud Plaintiffs.

102.   In the alternative, if the Foreclosures are not void, then, as a proximate result of such conspiracy, Plaintiffs were proximately damaged by such conspiracy in an amount to be proven at trial in that their liens on the Homes were extinguished with no payment to Plaintiffs, even though the Homes had approximately $10.5 million in equity, net of the liens senior to Israel's lien.

103.   Plaintiffs are informed and believe, and on that basis allege, that Elkwood, Fieldbrook, Reliable, Nourafshan, Does 1 through 50, inclusive, and each of them, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiffs.  Plaintiffs are therefore entitled to exemplary and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs Howard L. Abselet and Israel Abselet pray for judgment as follows:

1.    On the First Claim for Relief, for Quiet Title to the Chalette Home, as against Chase, Chase Loan Services, Fieldbrook, Nourafshan, Reliable, Dayani, Soda Partners, DMARC, the Malakzads, the Trustee, and Citivest,

(A)    for a declaration:

(1)    that Chalette Foreclosure Sale is void;

(2)    that title in the Chalette Home is vested in the Trustee, as trustee of Solyman's bankruptcy; and

(3)    that until the order for relief was entered in Solyman's bankruptcy, Solyman, as trustee of the Solyman Family

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

Trust, retained ownership of the Chalette Home despite the Chalette Foreclosure Sale and any purported transfer of the Chalette Home,

(4)    that once the order for relief was entered in Solyman's bankruptcy, ownership of the Chalette Home was transferred to his bankruptcy estate; and

(5)    that the liens of Chase, Fieldbrook, Israel, Howard, Dayani, Soda Partners, and DMARC, and each of them, against the Chalette Home, remain with the same validity and in that order of priority (the order of priority that they had if the Chalette Foreclosure Sale had not occurred);

(6)    Of the amount and terms of the liens of Chase, Fieldbrook, Israel, Howard, Dayani, Soda Partners, and DMARC, and each of them, against the Chalette Home; and

(B)    for an order that Nourafshan and Reliable turn over to the Trustee all of the proceeds of the sale of the Chalette Home to the Malakzads.

2.    On the Second Claim for Relief, for Quiet Title to the Rexford Home, as against Chase, Quality Loan, Fieldbrook, Elkwood, Soda Partners, DMARC, the Trustee, and Citivest, for a declaration:

(A)    that Rexford Foreclosure Sale is void;

(B)    that title in the Rexford Home is vested in the Trustee, as trustee of Massoud's bankruptcy;

(C)    that until the order for relief was entered in Massoud's bankruptcy, Massoud, as trustee of the Massoud Family Trust, retained ownership of the Rexford Home despite the Rexford Foreclosure Sale;

**COMPLAINT TO QUIET TITLE ETC.**

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

THE DAVID FIRM®
LAW OFFICES
617 W. 7ᵗʰ St., Suite 702
Los Angeles, California 90017
(213) 550-4020

(D)   that once the order for relief was entered in Massoud's bankruptcy, ownership of the Rexford Home was transferred to his bankruptcy estate; and

(E)   that the liens of Chase, Elkwood, Israel, Howard, Soda Partners, and DMARC, and each of them, against the Rexford Home, remain with the same validity and in that order of priority (the order of priority that they had if the Rexford Foreclosure Sale had not occurred).

3.   On the Third Claim for Relief, for Conspiracy to Chill Bidding, as against Elkwood, Fieldbrook, Reliable, Nourafshan, and Does 1 through 50, inclusive, and all of them, for

(A)   compensatory damages in the amount of $15,703,807.33 as of date of the settlement agreement by and between the Trustee and the Abselets; and

(B)   exemplary and punitive damages in an amount to be proven at trial;

4.   For interest on all sums;

5.   For an award of attorney's fees, as provided in the various loan documents, deeds of trust, and the Judgment;

6.   For costs of litigation; and

7.   For such further relief as the Court may award.

**COMPLAINT TO QUIET TITLE ETC.**

DATED:  December 11, 2017      Respectfully submitted,

THE DAVID FIRM®

By:  __*/s/ Henry S. David*_____
     Henry S. David
Attorneys for Plaintiffs
HOWARD L. ABSELET and
ISRAEL ABSELET

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

## VERIFICATION

I, Israel Abselet, declare:

I am (A) one of the plaintiffs and (B) the attorney in fact for the other plaintiff in the captioned matter.

I have read the foregoing **COMPLAINT (1) TO QUIET TITLE (TWO COUNTS); AND (2) FOR CONSPIRACY TO CHILL BIDDING** (the "Complaint") and know the contents thereof.

The matters stated in the Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

I am executing this Verification in _____New York_____, New York, on December 11, 2017.

_____
Israel Abselet

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

- 35 -
**COMPLAINT TO QUIET TITLE ETC.**

**INDEX OF EXHIBITS**

| Ex. No. | Description |
|---------|-------------|
| 1 | Legal Description (Chalette Home) |
| 2 | Legal Description (Rexford Home) |
| 3 | Pacific Western Bank Deed of Trust (Chalette Home), recorded March 25, 2009 |
| 4 | Pacific Western Bank Deed of Trust (Rexford Home), recorded March 25, 2009 |
| 5 | Full Recoveyance (Rexford Home), recorded July 14, 2015 |
| 6 | Notice of Trustee's Sale (Chalette Home), recorded January 27, 2015 |
| 7 | Notice of Trustee's Sale (Rexford Home), recorded January 27, 2015 |
| 8 | Assignment of Note and Deed of Trust, recorded March 6, 2015 |
| 9 | Trustee's Deed Upon Sale (Chalette Home), recorded March 6, 2015 |
| 10 | Trustee's Deed Upon Sale (Rexford Home), recorded March 6, 2015 |
| 11 | Lease (Rexford Home), dated March 7, 2015 |

THE DAVID FIRM®
LAW OFFICES
617 W. 7th St., Suite 702
Los Angeles, California 90017
(213) 550-4020

**COMPLAINT TO QUIET TITLE ETC.**

EXHIBIT "1"

## Legal Description of the Chalette Home

LOT 34 IN TRACT NO. 24484, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 657, PAGES 99 AND 100 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N. 4391-009-002
AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210

EXHIBIT "2"

**<u>Legal Description of the Rexford Home</u>**

LOT 5 AND THE NORTHERLY 15 FEET OF LOT 4 OF TRACT NO. 4201, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 46, PAGE 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N. 4350-009-012
AKA: 910 NORTH REXFORD DRIVE, BEVERLY HILLS, CA 90210

EXHIBIT "3"

 This page is part of your document - DO NOT DISCARD 

## 20090425658

 

**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/25/09 AT 08:00AM**

**Pages:**
**0012**

| | |
|---|---|
| FEES · | 65.00 |
| TAXES : | 0 00 |
| OTHER : | 0.00 |
| PAID : | 65.00 |

 



**L E A D S H E E T**



200903250210006

00000246681



002026336

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t19

Citivest000089

ŗ

**RECORDATION REQUESTED BY:**

**RECORDING REQUESTED BY**
**STEWART TITLE**

**WHEN RECORDED MAIL TO:**
Pacific Western Bank
West Covina Office
220 South Vincent Avenue
West Covina, CA  91790

**SEND TAX NOTICES TO:**
Solyman Yashouafar, Trustee of The Solyman and
Soheila Yashouafar 2004 Trust under the provisions of
a trust agreement dated March 8, 2004
660 South Figueora Street, 24th Floor
Los Angeles, CA  90017

03/25/2009

*20090425658*

**FOR RECORDER'S USE ONLY**

2o0282

## DEED OF TRUST

THIS DEED OF TRUST is dated March 20, 2009, among Solyman Yashouafar, as Trustee of the Solyman and Soheila Yashouafar 2004 Trust dated March 8, 2004 ("Trustor"); Pacific Western Bank, whose address is West Covina Office, 220 South Vincent Avenue, West Covina, CA  91790 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Los Angeles County, State of California:

Lot 34, of Tract No. 24484, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 657, Pages 99 and 100 of Maps, in the Office of the County recorder of said County.

The Real Property or its address is commonly known as  580 Chalette Drive, Beverly Hills, CA  90210.  The Assessor's Parcel Number for the Real Property is 4391-009-002.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to  (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the

16C

Citivest000084

application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or  (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property.  This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower.  (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.  (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property.  These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law.  The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code.  Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender.  Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms.  Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property; (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances.  Trustor hereby (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760        Page 3

4

attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default

Citivest000087

# DEED OF TRUST
## (Continued)

under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to Chase Manhattan Mortgage Corporation described as: Deed of Trust dated January 27, 2004 recorded on February 13, 2004 as Instrument No. 04-332465 of Official Records in the Office of County Recorder of said County. The existing obligation has a current principal balance of approximately $1,475,000.00 and is in the original principal amount of $1,475,000.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted

# DEED OF TRUST
## (Continued)

Loan No: 200366760                                                                 Page 5

by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Borrower's or any Trustor's ability to repay the Indebtedness or perform their respective obligations under this

Citivest000069

Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner end to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the

Citivest000050

# DEED OF TRUST
## (Continued)

Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

Citivest000054

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Pacific Western Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Massoud Yashouafar and Solyman Yeshouafer and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 9

relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Pacific Western Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 20, 2009, **in the original principal amount of $6,551,575.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR:   THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Solyman Yashouafar, Trustee of The Solyman and Soheila Yashouafar 2004 Trust under the provisions of a trust agreement dated March 8, 2004.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

TRUSTOR:

X _____
Solyman Yashouafar, Trustee of The Solyman and Soheila Yashouafar 2004 Trust under the provisions of a Trust Agreement dated March 8, 2004

Citivest000093

11

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CALIFORNIA_ }
} SS
COUNTY OF _Los Angeles_ }

On _March 23rd_ , 20 _09_ before me, _Michael Johnson robert , Notary public_
(here insert name and title of the officer)

personally appeared Solyman Yashouafar, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1797721
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2011

(seal)

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____ .

Date: _____   Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.43.00.103   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - CA
I:\HARPWNB\CFIWIN\CFI\LPL\G01.FC TR-10860 PR-10

Citivest000053

12

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:


NAME OF NOTARY: Michael Robert Johnson

DATE COMMISSION EXPIRES:  December 1, 2010

COUNTY WHERE BOND IS FILED:  Los Angeles

COMMISSION NO.:  1707721

VENDOR NO.:  NNA1

PLACE OF EXECUTION:  Irvine

DATE: 3/24/09

Stewart Title,California


_____

Chris Maziar

Citivest000095

EXHIBIT "4"

 

**This page is part of your document - DO NOT DISCARD**



# 20090425659



**Pages:**
**0012**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/25/09 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 65.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 65.00 |





**L E A D S H E E T**



200903250210006

00000246682



002026336

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E53T052

t19

RECORDATION REQUESTED BY:

**RECORDING REQUESTED BY
STEWART TITLE**

WHEN RECORDED MAIL TO:
    Pacific Western Bank
    West Covina Office
    220 South Vincent Avenue
    West Covina, CA  91790

SEND TAX NOTICES TO:
    Massoud Yashouafar, Trustee of The Massoud and
    Parinaz Yashouafar 2003 Trust under the provisions of
    a trust agreement dated June 18, 2003
    660 South Figueroa Street, 24th Floor
    Los Angeles, CA  90017

03/25/2009

*20090425659*

FOR RECORDER'S USE ONLY

200282

## DEED OF TRUST

THIS DEED OF TRUST is dated March 20, 2009, among Massoud  Yashouafar, as Trustee of the Massoud and Parinaz Yashouafar 2003 Trust, u/d/t June 18, 2003 ("Trustor"); Pacific Western Bank, whose address is West Covina Office, 220 South Vincent Avenue, West Covina, CA  91790 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Los Angeles County, State of California:

> Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 46, Page 63 of Maps, in the Office of the County recorder of said County.

The Real Property or its address is commonly known as  910 North Rexford Drive, Beverly Hills, CA  90210.  The Assessor's Parcel Number for the Real Property is 4350-009-012.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES.  Trustor warrants that:  (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender;  (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property;  (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor;  (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS.  Except as prohibited by applicable law, Trustor waives any right to require Lender to  (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness;  (b) proceed against any person, including Borrower, before proceeding against Trustor;  (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor;  (d) apply any payments or proceeds received against the Indebtedness in any order;  (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale;  (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or  (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of  (h) any disability or other defense of Borrower, any other guarantor or surety or any other person;  (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness;  (j) the

17C

application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise, (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to

# DEED OF TRUST
## (Continued)

Loan No: 200366760             Page 3

attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default

Citivest000184

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760                                                                                                            Page 4

under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy, (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation to Chase Manhattan Mortgage Corporation described as: Deed of Trust dated January 2, 2004 recorded on January 16, 2004 as Instrument No. 04-112689 of Official Records in the Office of County Recorder of said County. The existing obligation has a current principal balance of approximately $2,516,300.00 and is in the original principal amount of $2,516,300.00. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted

**DEED OF TRUST**
**(Continued)**

Loan No: 200366760                                                                                    Page 5

b

by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust.

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Borrower's or any Trustor's ability to repay the Indebtedness or perform their respective obligations under this

Citivest000188

**DEED OF TRUST**
**(Continued)**

7

Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of the Trust, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the

Citivest000187

# DEED OF TRUST
## (Continued)

Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Pacific Western Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Massoud Yashouafar and Solyman Yashouafar and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances

relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Pacific Western Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated March 20, 2009, **in the original principal amount of $6,551,575.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Pacific Western Bank, whose address is 5900 La Place Court, Carlsbad, CA  92008 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Massoud Yashouafar, Trustee of The Massoud and Parinaz Yashouafar 2003 Trust under the provisions of a trust agreement dated June 18, 2003.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X_____

Massoud Yashouafar, Trustee of The Massoud and Parinaz Yashouafar 2003 Trust under the provisions of a Trust Agreement dated June 18, 2003

*11*

Loan No: 200366760

## DEED OF TRUST
### (Continued)

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
                        ) SS
COUNTY OF _Los Angeles_ )

On _March 23rd_, 20 _09_ before me, _Michael Robert Johnson notary public_
(here insert name and title of the officer)

personally appeared **Massoud Yashouafar**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

MICHAEL ROBERT JOHNSON
Commission # 1707721
Notary Public - California
Los Angeles County
My Comm. Expires Dec 1, 2010
(Seal)

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____    Beneficiary: _____

                                          By: _____

                                          Its: _____

---

LASER PRO Lending, Ver. 5.43.00.103   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - CA
I:\HARPWNB\CFI\WIN\CFI\LPL\G01.FC  TR-10860  PR-10

12

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:


NAME OF NOTARY: Michael Robert Johnson

DATE COMMISSION EXPIRES:  December 1, 2010

COUNTY WHERE BOND IS FILED:  Los Angeles

COMMISSION NO.:  1707721

VENDOR NO.:  NNA1

PLACE OF EXECUTION:  Irvine

DATE: 3/24/09

Stewart Title,California


Chris Maziar

EXHIBIT "5"



## This page is part of your document - DO NOT DISCARD



# 20150846098



Pages:
0002

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/14/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



## L E A D S H E E T



201507140110020

## 00010861834



006960310

## SEQ:
## 11

**DAR - Title Company (Hard Copy)**



## THIS FORM IS NOT TO BE DUPLICATED

R26

APN: 4350-009-012



WHEN RECORDED, MAIL TO:

ELKWOOD ASSOCIATES, LLC
1 CAPITOL MALL #660
SACRAMENTO, CA 95814

### FULL RECONVEYANCE

TO:  CHICAGO TITLE COMPANY, a California Corp., TRUSTEE

The undersigned is the legal owner and holder of the Note and Notes for the original sum of TWO MILLION AND NO/100 DOLLARS, ($2,000,000), and all other indebtedness secured by Deed of Trust dated February 5, 2004 made by MASSOUD YASHOUAFAR and PARINAZ YASHOUAFAR, INDIVIDUALS, Trustor, to CHICAGO TITLE COMPANY, Trustee, and recorded on February 13, 2004, as instrument number 04-335103 in Book _____, Page _____, of Official Records, in the office of the County Recorder of Los Angeles County, California:

Said Note or Notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, upon delivery to you of said Deed of Trust and said Note or Notes and upon payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said Note or Notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust, together with the said Deed of Trust, and to reconvey, without warranty, to the parties legally entitled thereto, all the estate now held by you under the Deed of Trust.

Dated: December  3 0 , 2014

TRI-CENTER GROUP, INC., a California corporation

By: _____
      Kambiz Joseph Shabani
Its:      President


State of California          )
County of Los Angeles     ) ss.


On December 30 , 20 14 before me, Kim Nguyen _____, a Notary Public, personally appeared Kambiz Joseph Shabani _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

KIM NGUYEN
Commission # 2077709
Notary Public - California
Los Angeles County
My Comm. Expires Aug 22, 2018

EXHIBIT "6"



**This page is part of your document - DO NOT DISCARD**



# 20150095416



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/27/15 AT 02:20PM**

**Pages:**
**0003**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**L E A D S H E E T**



**201501273240045**

**00010110611**



**006619933**

**SEQ:**
**03**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUESTED BY:

CITIVEST FINANCIAL SRS

WHEN RECORDED MAIL TO:

CITIVEST FINANCIAL SERVICES
P.O. BOX 861894
LOS ANGELES, CA 90086


01/27/2015

*20150095416*

| APN: 4391-009-002 | T. S. NO. 15-01-1002a | REF: CHALETTE |

## NOTICE OF TRUSTEE'S SALE

### IMPORTANT NOTICE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED MARCH 20, 2009. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **FEBRUARY 20, 2015 at 9:30 A.M.** Citivest Financial Services, Inc. as duly appointed Trustee or Successor Trustee under and pursuant to a Deed of Trust recorded on 3/25/2009, as instrument number 2009-0425658 of Official Records in the office of the County Recorder of Los Angeles County, State of California, Executed by

Solyman Yashouafar, as trustee of the Solyman and Soheila Yashouafar 2004 Trust dated March 8, 2004 as Trustor

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH, A CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A STATE OR FEDERAL CREDIT UNION, OR A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION/THRIFT DOMICILED IN THE STATE OF CALIFORNIA or other form of payment authorized by 2924h(b), (payable at the time of sale in lawful money of the United States)**

**PLACE OF SALE: ON THE STEPS OF THE SOUTH WEST ENTRANCE OF UNITED STATES POST OFFICE AT 900 N Alameda Street, Los Angeles, CA 90012.**

All rights, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as follows:

Lot 34 in tract no. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 657, Pages 99 and 100 of maps, in the office of the county recorder of said county,

APN: 4391-009-002 _____ T. S. NO. 15-01-1002a _____ REF: CHALETTE

The street address and other common designation, if any, of the real property described above is purported to be: **580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210**.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any shown herein.

Said sale will be made, but without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of said deed of trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total ESTIMATED amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimate costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$6,569,508.05**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell recorded as instrument number 2014-0086798 on January 27, 2014, of Official Records in the office of the County Recorder of Los Angeles County, State of California, where the real property is located.

Dated January 26, 2015                    CITIVEST FINANCIAL SERVICES, INC.

BY: _____

E.M. MAZZARINO, President
P.O. Box 861894
Los Angeles, CA 90086
Telephone No. 888-666-1685 Ext. 503

Citivest000087

EXHIBIT "7"

RECORDING REQUESTED BY:

CITIVEST FINANCIAL SRS

WHEN RECORDED MAIL TO:

CITIVEST FINANCIAL SERVICES
P.O. BOX 861894
LOS ANGELES, CA 90086

01/27/2015

*20150095418*

| APN: 4350-009-012 | T. S. NO. 15-01-1002b | REF: REXFORD |

## NOTICE OF TRUSTEE'S SALE

COPY

### IMPORTANT NOTICE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED MARCH 20, 2009. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **FEBRUARY 23, 2015 at 9:30 A.M.** Citivest Financial Services, Inc. as duly appointed Trustee or Successor Trustee under and pursuant to a Deed of Trust recorded on 3/25/2009, as instrument number 2009-0425659 of Official Records in the office of the County Recorder of Los Angeles County, State of California, Executed by

Massoud Yashouafar, as Trustee of the Massoud and Parinaz Yashouafar 2003 Trust, u/d/t June 18, 2003 as Trustor

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH, A CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A STATE OR FEDERAL CREDIT UNION, OR A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION/THRIFT DOMICILED IN THE STATE OF CALIFORNIA or other form of payment authorized by 2924h(b), (payable at the time of sale in lawful money of the United States)**

**PLACE OF SALE: ON THE STEPS OF THE SOUTH WEST ENTRANCE OF UNITED STATES POST OFFICE AT 222 N Grand Ave., Los Angeles, CA 90012.**

All rights, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as follows:

Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 46, page 63 of maps, in the office of the county recorder of said county.

APN: 4350-009-012             T. S. NO. 15-01-1002b                    REF: REXFORD

The street address and other common designation, if any, of the real property described above is purported to be: **910 NORTH REXFORD DRIVE, BEVERLY HILLS, CA 90210.**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any shown herein.

Said sale will be made, but without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of said deed of trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total ESTIMATED amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimate costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$6,569,508.05**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell recorded as instrument number 2014-0086791 on January 27, 2014, of Official Records in the office of the County Recorder of Los Angeles County, State of California, where the real property is located.

Dated January 26, 2015                    CITIVEST FINANCIAL SERVICES, INC.


BY:

    E.M. MAZZARINO, President
    P.O. Box 861894
    Los Angeles, CA 90086
    Telephone No. 888-666-1685 Ext. 503

Citivest000141

EXHIBIT "8"




**This page is part of your document - DO NOT DISCARD**



## 20150248925



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/06/15 AT 03:47PM**

Pages:
0003

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201503061890029

**00010256605**



006685990

**SEQ:**
**02**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E503/41

Citivest000041


03/06/2015

*20150248925*

RECORDING REQUESTED BY

**RUTGERS PROPERTIES**

AND WHEN RECORDED MAIL TO:

NAME          FIELDBROOK, INC.
ADDRESS       16633 VENTURA BLVD., 6 FLOOR
STATE & ZIP   ENCINO, CA 91436

## ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

TITLE ORDER NO.               ESCROW NO. CHALETTE               APN NO.  4391-009-002

For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial interest in and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on  March 25, 2009, in Book_____, Page _____ of Official Records in the Office of the County Recorder of Los Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 657, pages 99 and 100 of maps, in the office of the county recorder of said county.

A.P.N. 4391-009-002   AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder.  This Assignment is made without recourse, representateions or warranties of any kind except as may be set forth in any Loan Sale Agreement that may be between assignor and assignee.

**A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .**

Dated: February 18, 2015                          ELKWOOD ASSOCIATES, LLC

                                                  BY: _____
                                                      Thelma S. Guerrero, Manager

STATE OF CALIFORNIA      }
COUNTY OF  LOS ANGELES}  S.S.

On FEBRUARY 18, 2015 before me, EDWARD M. MAZZARINO, (a Notary Public), personally appeared Thelma S. Guerrero, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of _Los Angeles_

On _3-18-15_ before me _Edward M Mazzarino_ , Notary Public
                                    (Insert Name of Notary Public and Title)

personally appeared _Thelma S. Guerrero_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose

name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

EXHIBIT "9"

 

## This page is part of your document - DO NOT DISCARD



# 20150248926



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/06/15 AT 03:47PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201503061890029

## 00010256606



006685990

## SEQ:
## 03

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E503741

Citivest000037



03/06/2015

*20150248926*

RECORDING REQUESTED BY

RUTGERS PROPERTIES

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME:      FIELDBROOK, INC.
ADDRESS:   16633 VENTURA BLVD., 6 FL
CITY:      LOS ANGELES
STATE, ZIP:  CA 91436

Trustee's Sales Number:  15-01-1002a                    Assessor's Parcel Number: 4391-009-002
X THE UNDER SIGNED DECLARES
DOCUMENTARY TRANSFER TAX $  NONE

__XX__ GRANTEE __XX__ WAS    ~~WAS NOT~~ THE FORECLOSING BENEFICIARY:  CONSIDERATION **$5,800,000.00**
        UNPAID DEBT:   **5,800,000.00**  NON-EXEMPT AMOUNT:  $    0.00

_____ COMPUTED ON THE CONSIDERATION OR VALUE OF PROPERTY CONVEYED.

_____ COMPUTED ON THE CONSIDERATION OR VALUE LESS LIENS OR ENCUMBRANCES REMAINING AT TIME OF
        SALE

_____ UNINCORPORATED AREA ___XX___ CITY OF: BEVERLY HILLS

## TRUSTEE'S DEED UPON SALE

CITIVEST FINANCIAL SERVICES, INC., A CORPORATION (HEREIN AFTER CALLED TRUSTEE),
HERBY GRANTS AND CONVEYS, BUT WITHOUT COVENANT OR WARRANTY OF ANY KIND,
EXPRESSED OR IMPLIED, REGARDING TITLE TO SAID PROPERTY OR ANY ENCUMBRANCES
THEREON TO

FIELDBROOK INC., A CALIFORNIA CORPORATION

(HEREIN CALLED GRANTEE), THE REAL PROPERTY IN THE CITY OF BEVERLY HILLS,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of
California, as per map recorded in book 657, pages 99 and 100 of maps, in the office of
the county recorder of said county.

A.P.N. 4391-009-002
AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210

THE CONVEYANCE IS MADE PURSUANT TO THE AUTHORITY AND POWERS VESTED IN
SAID TRUSTEE, AS TRUSTEE, OR SUCCESSOR TRUSTEE, OR SUBSTITUTED TRUSTEE,
UNDER THAT CERTAIN DEED OF TRUST EXECUTED BY SOLYMAN AND SOHEILA
YASHOUAFAR 2004 TRUST DATED 3-8-2004 ("TRUSTOR"), RECORDED 03-25-2009, AS
DOCUMENT NO. 2009-0425658, OF OFFICIAL RECORDS OF LOS ANGELES COUNTY,
CALIFORNIA: AND PURSUANT TO THE NOTICE OF DEFAULT RECORDED 1/27/2014, AS
INSTRUMENT NO. 2014-0086798, IN BOOK,        PAGE        , OF OFFICIAL RECORDS OF
SAID COUNTY.    TRUSTEE HAVING COMPLIED WITH ALL APPLICABLE STATUTORY
REQUIREMENTS OF THE STATE OF CALIFORNIA AND PERFORMED ALL DUTIES REQUIRED
BY SAID DEED OF TRUST, INCLUDING, AMONG OTHER THINGS, AS APPLICABLE, THE
MAILING OF COPIES OF NOTICES OR THE PUBLICATION OF A COPY OF THE NOTICE OF
DEFAULT OR THE PERSONAL DELIVERY OF THE COPY OF THE NOTICE OF DEFAULT OR
THE POSTING OF THE COPIES OF THE NOTICE OF SALE OR THE PUBLICATION OF A COPY
THEREOF.

1

Citivest000098

AT THE TIME AND PLACE FIXED IN THE NOTICE OF TRUSTEE'S NOTICE OF SALE, SAID TRUSTEE DID SELL SAID PROPERTY ABOVE DESCRIBED AT PUBLIC AUCTION ON FEBRUARY 20, 2015 TO SAID GRANTEE, BEING THE HIGHEST BIDDER THEREFORE, FOR $5,800,000.00, CASH, LAWFUL MONEY OF THE UNITED STATES, IN SATISFACTION OF THE INDEBTEDNESS THEN SECURED BY SAID DEED OF TRUST.

**A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .**

DATED: FEBRUARY 25, 2015                    CITIVEST FINANCIAL SERVICES, INC.


                                           BY: _R. M. Sandoval_
                                               R. M. SANDOVAL, V. P.


STATE OF CALIFORNIA         }
COUNTY OF LOS ANGELES } S.S.

On **FEBRUARY 25, 2015** before me, **EDWARD M. MAZZARINO**, (A Notary Public), personally appeared **R.M. SANDOVAL**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _2-25-15_ before me, _Edward M. Mazzarino_ ,Notary Public
(Insert Name of Notary Public and Title)
personally appeared _R. M. Sandoval_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

Citivest000040

# EXHIBIT "10"

**This page is part of your document - DO NOT DISCARD**





## 20150248924



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/06/15 AT 03:47PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**

201503061890029

00010256604

006685990

**SEQ:
01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E503141



RECORDING REQUESTED BY

ELKWOOD ASSOCIATES, LLC

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME:     ELKWOOD ASSOCIATES, LLC
ADDRESS: 1 CAPITOL MALL #660
CITY:        SACRAMENTO
STATE, ZIP: CA 95814

03/06/2015

*20150248924*

---

Trustee's Sales Number:  15-01-1002b

Assessor's Parcel Number: 4350-009-012

X *The UNDER SIGNED DECLARES*
DOCUMENTARY TRANSFER TAX $  NONE

_XX_  GRANTEE _XX_  WAS ____ ~~WAS NOT~~ THE FORECLOSING BENEFICIARY:  CONSIDERATION $782,508.05
          UNPAID DEBT:  782,508.05  NON-EXEMPT AMOUNT:  $        -0-

_____ COMPUTED ON THE CONSIDERATION OR VALUE OF PROPERTY CONVEYED.

_____ COMPUTED ON THE CONSIDERATION OR VALUE LESS LIENS OR ENCUMBRANCES REMAINING AT TIME OF
          SALE

_____ UNINCORPORATED AREA ____XX____ CITY OF: BEVERLY HILLS

---

## TRUSTEE'S DEED UPON SALE

CITIVEST FINANCIAL SERVICES, INC., A CORPORATION (HEREIN AFTER CALLED TRUSTEE),
HERBY GRANTS AND CONVEYS, BUT WITHOUT COVENANT OR WARRANTY OF ANY KIND,
EXPRESSED OR IMPLIED, REGARDING TITLE TO SAID PROPERTY OR ANY ENCUMBRANCES
THEREON TO

ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

(HEREIN CALLED GRANTEE), THE REAL PROPERTY IN THE CITY OF BEVERLY HILLS,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

Lot 5 and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the city of Beverly Hills,
County of Los Angeles, State of California, as per map recorded in book 46, page 63 of
maps, in the office of the county recorder of said county.

A.P.N. 4350-009-012
AKA: 910 NORTH REXFORD DRIVE, BEVERLY HILLS, CA 90210

THE CONVEYANCE IS MADE PURSUANT TO THE AUTHORITY AND POWERS VESTED IN
SAID TRUSTEE, AS TRUSTEE, OR SUCCESSOR TRUSTEE, OR SUBSTITUTED TRUSTEE,
UNDER THAT CERTAIN DEED OF TRUST EXECUTED BY MASSOUD YASHOUAFAR, AS
TRUSTEE OF THE MASSOUD AND PARINAZ YASHOUAFAR 2003 TRUST, u/d/t JUNE 18, 2003
("TRUSTOR"), RECORDED 03-25-2009, AS DOCUMENT NO. 2009-0425659, OF OFFICIAL
RECORDS OF LOS ANGELES COUNTY, CALIFORNIA: AND PURSUANT TO THE NOTICE OF
DEFAULT RECORDED 1/27/2014, AS INSTRUMENT NO. 2014-0086791, IN BOOK,          PAGE
, OF OFFICIAL RECORDS OF SAID COUNTY.  TRUSTEE HAVING COMPLIED WITH ALL
APPLICABLE STATUTORY REQUIREMENTS OF THE STATE OF CALIFORNIA AND
PERFORMED ALL DUTIES REQUIRED BY SAID DEED OF TRUST, INCLUDING, AMONG
OTHER THINGS, AS APPLICABLE, THE MAILING OF COPIES OF NOTICES OR THE
PUBLICATION OF A COPY OF THE NOTICE OF DEFAULT OR THE PERSONAL DELIVERY OF
THE COPY OF THE NOTICE OF DEFAULT OR THE POSTING OF THE COPIES OF THE NOTICE
OF SALE OR THE PUBLICATION OF A COPY THEREOF.

1

AT THE TIME AND PLACE FIXED IN THE NOTICE OF TRUSTEE'S NOTICE OF SALE, SAID TRUSTEE DID SELL SAID PROPERTY ABOVE DESCRIBED AT PUBLIC AUCTION ON FEBRUARY 23, 2015 TO SAID GRANTEE, BEING THE HIGHEST BIDDER THEREFORE, FOR $782,508.05, CASH, LAWFUL MONEY OF THE UNITED STATES, IN SATISFACTION OF THE INDEBTEDNESS THEN SECURED BY SAID DEED OF TRUST.

**A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of the document .**

DATED: FEBRUARY 25, 2015                    CITIVEST FINANCIAL SERVICES, INC.

BY: _R. M. Sandoval_
R. M. SANDOVAL, V. P.

STATE OF CALIFORNIA          }
COUNTY OF LOS ANGELES } S.S.

On **FEBRUARY 25, 2015** before me, **EDWARD M. MAZZARINO**, (A Notary Public), personally appeared **R.M. SANDOVAL**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California

County of _Los Angeles_

On _2-25-15_ before me, _Edward M. Mazzari,_ Notary Public

(Insert Name of Notary Public and Title)

personally appeared _P. McSandoval_

who proved to me on the basis of satisfactory evidence to be the person(s) whose

name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by

his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the

foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

EDWARD M. MAZZARINO
COMM. # 2015231
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES MARCH 26, 2017

EXHIBIT "11"



EXHIBIT
38



CALIFORNIA
ASSOCIATION
OF REALTORS®

RESIDENTIAL LEASE OR
MONTH-TO-MONTH RENTAL AGREEMENT
(C.A.R. Form LR, Revised 12/13)

Date 3/7/2015, _____ Henry Shliburg Elkwood Associates, LLC ("Landlord") and
_____ Massoud Yashouafar _____ ("Tenant") agree as follows:

**1. PROPERTY:**
A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: 910 N. Rexford
Dr. Beverly Hills, CA 90210 ("Premises").
B. The Premises are for the sole use as a personal residence by the following named person(s) only: Massoud
Yashouafar, Parinaz Yashouafar & their 4 children
C. The following personal property, maintained pursuant to paragraph 11, is included: None
or ☐ (if checked) the personal property on the attached addendum.
D. The Premises may be subject to a local rent control ordinance No

**2. TERM:** The term begins on (date) 3/7/2015 ("Commencement Date"), (Check A or B):
☐ A. Month-to-Month: and continues as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days
prior to the intended termination date. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be
given on any date.
☒ B. Lease: and shall terminate on (date) 3/1/2017 at 12:01 ☒ AM/☐ PM.
Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in
writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due
Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall
be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full
force and effect.

**3. RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
A. Tenant agrees to pay $ 25,000 per month for the term of the Agreement.
B. Rent is payable in advance on the 1st (or ☐ _____) day of each calendar month, and is delinquent on the next day.
C. If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full month's Rent in
advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day
for each day remaining in prorated second month.
D. PAYMENT: Rent shall be paid by ☒ personal check, ☐ money order, ☒ cashier's check, or ☐ other _____, to
(name) Elkwood Associates, LLC (phone) _____, at
(address) provided to tenant _____, (or
at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours
of 8:30AM and 5:30PM on the following days First of Month ). If any payment
is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay
Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.

**4. SECURITY DEPOSIT:**
A. Tenant agrees to pay $ 0 as a security deposit. Security deposit will be ☐ transferred to and held by the
Owner of the Premises, or ☐ held in Owner's Broker's trust account.
B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes
Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of
Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace, or return personal property or appurtenances.
SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the
security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to
Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: (1) furnish Tenant an itemized statement indicating the amount of any
security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and (2)
return any remaining portion of the security deposit to Tenant.
C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned
by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
D. No interest will be paid on security deposit unless required by local law.
E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's
Broker's trust account, and Broker's authority is terminated before expiration of this Agreement, and security deposit is released to someone
other than Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been
provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

**5. MOVE-IN COSTS RECEIVED/DUE:** Move-in funds made payable to _____
shall be paid by ☐ personal check, ☐ money order, or ☐ cashier's check.

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from _____ To _____ (date) | | | | |
| *Security Deposit | | | | |
| Other | | | | |
| Other | | | | |
| Total | | | | |

*The maximum amount Landlord may receive as security deposit, however designated, cannot exceed two months' Rent for unfurnished premises, or
three months' Rent for furnished premises.

Tenant's Initials ( ____ )( ____ )                    Landlord's Initials ( ____ )( ____ )

© 2013, California Association of REALTORS®, Inc.

Reviewed by _____ Date _____

LR REVISED 12/13 (PAGE 1 OF 6)

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 6)

Premises: _____ Date: _____

**6.   LATE CHARGE; RETURNED CHECKS:**

A.   Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 (or ☐_____ ) calendar days after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $ 200 _____ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.

B.   Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 3 or prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

**7.   PARKING: (Check A or B)**

☐A.   Parking is permitted as follows: On site _____

The right to parking ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking properly licensed and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work or storage of inoperable vehicles is not permitted in parking space(s) or elsewhere on the Premises.

OR ☐B.   Parking is not permitted on the Premises.

**8.   STORAGE: (Check A or B)**

☐A.   Storage is permitted as follows: On site _____
The right to separate storage space ☐ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $ _____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.

OR ☐B.   Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

**9.   UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: electric,water,gas except sewer,tel.,cable,etc _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.

**10.  CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke detector(s).
(Check all that apply:)

☒A.   Tenant acknowledges these items are clean and in operable condition, with the following exceptions: None _____

☐B.   Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).

☐C.   (i) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within 3 days after execution of this Agreement; ☐ prior to the Commencement Date; ☐ within 3 days after the Commencement Date.
(ii) Tenant shall complete and return the MIMO to Landlord within 3 (or ☐ _____ ) days after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

☒D.   Tenant will provide Landlord a list of items that are damaged or not in operable condition within 3 (or ☐ _____ ) days after Commencement Date, not as a contingency of this Agreement but rather as an acknowledgment of the condition of the Premises.

☐E.   Other: _____

**11.  MAINTENANCE:**

A.   Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings and appliances, and all mechanical, electrical, gas and plumbing fixtures, and smoke alarms, and keep them and the Premises clean, sanitary and well ventilated. Tenant shall be responsible for checking and maintaining all carbon monoxide detectors and any additional phone lines beyond the one line and jack that Landlord shall provide and maintain. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage with any item on the property. Tenant shall be charged for all repairs or replacements caused by Tenant, pets, guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall be charged for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall be charged for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

B.   ☐ Landlord ☒ Tenant shall water the garden, landscaping, trees and shrubs, except: _____

C.   ☐ Landlord ☒ Tenant shall maintain the garden, landscaping, trees and shrubs, except: _____

D.   ☐ Landlord ☒ Tenant shall maintain All property _____

E.   Tenant's failure to maintain any item for which Tenant is responsible shall give Landlord the right to hire someone to perform such maintenance and charge Tenant to cover the cost of such maintenance.

F.   The following items of personal property are included in the Premises without warranty and Landlord will not maintain, repair or replace them: None _____

Tenant's Initials ( _____ ) ( _____ )          Landlord's Initials ( _____ ) ( _____ )

| Reviewed by _____ Date _____ |

LR REVISED 12/13 (PAGE 2 OF 6)

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 6)

Premises: _____ Date: _____

12. **NEIGHBORHOOD CONDITIONS:** Tenant is advised to satisfy him or herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Tenant.

13. **PETS:** Unless otherwise provided in California Civil Code § 54.2, no animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except: _____

14. ☒ (If checked) **NO SMOKING:** No smoking of any substance is allowed on the Premises or common areas. If smoking does occur on the Premises or common areas, (i) Tenant is responsible for all damage caused by the smoking including, but not limited to stains, burns, odors and removal of debris; (ii) Tenant is in breach of this Agreement; (iii) Tenant, guests, and all others may be required to leave the Premises; and (iv) Tenant acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire premises regardless of when these items were last cleaned, replaced, or repainted. Such actions and other necessary steps will impact the return of any security deposit. The Premises or common areas may be subject to a local non-smoking ordinance.

15. **RULES/REGULATIONS:**
   A. Tenant agrees to comply with all Landlord rules and regulations that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.
   B. (If applicable, check one)
      ☐ 1. Landlord shall provide Tenant with a copy of the rules and regulations within _____ days or _____
      OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the rules and regulations.

16. ☐ (If checked) **CONDOMINIUM; PLANNED UNIT DEVELOPMENT:**
   A. The Premises are a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners' association ("HOA"). The name of the HOA is _____
      Tenant agrees to comply with all HOA covenants, conditions and restrictions, bylaws, rules and regulations and decisions ("HOA Rules"). Landlord shall provide Tenant copies of HOA Rules, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.
   B. (Check one)
      ☐ 1. Landlord shall provide Tenant with a copy of the HOA Rules within _____ days
      or _____
      OR ☐ 2. Tenant has been provided with, and acknowledges receipt of, a copy of the HOA Rules.

17. **ALTERATIONS; REPAIRS:** Unless otherwise specified by law or paragraph 29C, without Landlord's prior written consent, (i) Tenant shall not make any repairs, alterations or improvements in or about the Premises including: painting, wallpapering, adding or changing locks, installing antenna or satellite dish(es), placing signs, displays or exhibits, or using screws, fastening devices, large nails or adhesive materials; (ii) Landlord shall not be responsible for the costs of alterations or repairs made by Tenant; (iii) Tenant shall not deduct from Rent the costs of any repairs, alterations or improvements; and (iv) any deduction made by Tenant shall be considered unpaid Rent.

18. **KEYS; LOCKS:**
   A. Tenant acknowledges receipt of (or Tenant will receive ☐ prior to the Commencement Date, or ☐ _____):
      ☒ _____ key(s) to Premises,      ☐ _____ remote control device(s) for garage door/gate opener(s),
      ☐ _____ key(s) to mailbox,       _____
      ☐ _____ key(s) to common area(s),  _____
   B. Tenant acknowledges that locks to the Premises ☐ have, ☐ have not, been re-keyed.
   C. If Tenant re-keys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

19. **ENTRY:**
   A. Tenant shall make Premises available to Landlord or Landlord's representative for the purpose of entering to make necessary or agreed repairs, (including, but not limited to, installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters), decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors.
   B. Landlord and Tenant agree that 24-hour written notice shall be reasonable and sufficient notice, except as follows: (1) 48-hour written notice is required to conduct an inspection of the Premises prior to the Tenant moving out, unless the Tenant waives the right to such notice, (2) if Landlord has in writing informed Tenant that the Premises are for sale and that Tenant will be notified orally to show the premises (C.A.R. Form NSE), then, for the next 120 days following the delivery of the NSE, notice may be given orally to show the Premises to actual or prospective purchasers. (3) No written notice is required if Landlord and Tenant orally agree to an entry for agreed services or repairs if the date and time of entry are within one week of the oral agreement. (4) No notice is required: (i) to enter in case of an emergency; (ii) if the Tenant is present and consents at the time of entry; or (iii) if the Tenant has abandoned or surrendered the Premises.
   C. ☐ (If checked) Tenant authorizes the use of a keysafe/lockbox to allow entry into the Premises and agrees to sign a keysafe/lockbox addendum (C.A.R. Form KLA).

20. **SIGNS:** Tenant authorizes Landlord to place FOR SALE/LEASE signs on the Premises.

21. **ASSIGNMENT; SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without Landlord's prior written consent. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy, by voluntary act of Tenant, operation of law or otherwise, shall, at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Agreement.

Tenant's Initials ( _____ ) ( _____ )          Landlord's Initials ( _____ ) ( _____ )

| Reviewed by | _____ | Date | _____ |

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 3 OF 6)**

Premises: _____ Date: _____

**22. JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

**23. ☐ LEAD-BASED PAINT (If checked):** Premises were constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (C.A.R. Form FLD) and a federally approved lead pamphlet.

**24. ☐ MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises are located within one mile of an area once used for military training, and may contain potentially explosive munitions.

**25. ☐ PERIODIC PEST CONTROL:** Landlord has entered into a contract for periodic pest control treatment of the Premises and shall give Tenant a copy of the notice originally given to Landlord by the pest control company.

**26. ☐ METHAMPHETAMINE CONTAMINATION:** Prior to signing this Agreement, Landlord has given Tenant a notice that a health official has issued an order prohibiting occupancy of the property because of methamphetamine contamination. A copy of the notice and order are attached.

**27. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Landlord nor Brokers, if any, are required to check this website. If Tenant wants further information, Tenant should obtain information directly from this website.)

**28. POSSESSION:**

A. Tenant is not in possession of the Premises. If Landlord is unable to deliver possession of Premises on Commencement Date, such Date shall be extended to the date on which possession is made available to Tenant. If Landlord is unable to deliver possession within 5 (or ☐ _____ ) calendar days after agreed Commencement Date, Tenant may terminate this Agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid. Possession is deemed terminated when Tenant has returned all keys to the Premises to Landlord.

B. ☐ Tenant is already in possession of the Premises.

**29. TENANT'S OBLIGATIONS UPON VACATING PREMISES:**

A. Upon termination of this Agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate and surrender Premises to Landlord, empty of all persons; (iii) vacate any/all parking and/or storage space; (iv) clean and deliver Premises, as specified in paragraph C below, to Landlord in the same condition as referenced in paragraph 10; (v) remove all debris; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) _____

B. All alterations/improvements made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any alterations/improvements.

C. Right to Pre-Move-Out Inspection and Repairs: (i) After giving or receiving notice of termination of a tenancy (C.A.R. Form NTT), or before the end of a lease, Tenant has the right to request that an inspection of the Premises take place prior to termination of the lease or rental (C.A.R. Form NRI). If Tenant requests such an inspection, Tenant shall be given an opportunity to remedy identified deficiencies prior to termination, consistent with the terms of this Agreement. (ii) Any repairs or alterations made to the Premises as a result of this inspection (collectively, "Repairs") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with applicable law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. (iii) Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. Paragraph 29C does not apply when the tenancy is terminated pursuant to California Code of Civil Procedure § 1161(2), (3) or (4).

**30. BREACH OF CONTRACT; EARLY TERMINATION:** In addition to any obligations established by paragraph 29, in the event of termination by Tenant prior to completion of the original term of the Agreement, Tenant shall also be responsible for lost Rent, rental commissions, advertising expenses and painting costs necessary to ready Premises for re-rental. Landlord may withhold any such amounts from Tenant's security deposit.

**31. TEMPORARY RELOCATION:** Subject to local law, Tenant agrees, upon demand of Landlord, to temporarily vacate Premises for a reasonable period, to allow for fumigation (or other methods) to control wood destroying pests or organisms, or other repairs to Premises. Tenant agrees to comply with all instructions and requirements necessary to prepare Premises to accommodate pest control, fumigation or other work, including bagging or storage of food and medicine, and removal of perishables and valuables. Tenant shall only be entitled to a credit of Rent equal to the per diem Rent for the period of time Tenant is required to vacate Premises.

**32. DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty that render Premises totally or partially uninhabitable, either Landlord or Tenant may terminate this Agreement by giving the other written notice. Rent shall be abated as of the date Premises become totally or partially uninhabitable. The abated amount shall be the current monthly Rent prorated on a 30-day period. If the Agreement is not terminated, Landlord shall promptly repair the damage, and Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**33. INSURANCE:** Tenant's or guest's personal property and vehicles are not insured by Landlord, manager or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is advised to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss or damage. Tenant shall comply with any requirement imposed on Tenant by Landlord's insurer to avoid: (i) an increase in Landlord's insurance premium 33b (or Tenant shall pay for the increase in premium); or (ii) loss of insurance.

**34. WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (i) Tenant obtains a valid waterbed insurance policy; (ii) Tenant increases the security deposit in an amount equal to one-half of one month's Rent; and (iii) the bed conforms to the floor load capacity of Premises.

**35. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

Tenant's Initials ( ⟋ ) ( _____ )     Landlord's Initials ( 𝓙𝓥 ) ( _____ )

| Reviewed by | _____ | Date | _____ |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Gramercy pl

33b. Landlord will obtain insurance for ___

Premises: 910 N. Rexford Dr. B.H. CA 90210                                           Date: 3/7/15

36 NOTICE: Notices may be served at the following address, or at any other location subsequently designated:
Landlord: Elkwood Associates LLC                          Tenant: Massoud Yashouafar
      1 Capital Associates # 660                                 910 N. Rexford Dr
      Sacramento, CA 95814                                       B.H. CA 90210
36b.

37. TENANT ESTOPPEL CERTIFICATE: Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

38. REPRESENTATION:
   A. TENANT REPRESENTATION; OBLIGATIONS REGARDING OCCUPANTS; CREDIT: Tenant warrants that all statements in Tenant's rental application are accurate. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant of the Premises reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Agreement. Landlord may cancel this Agreement: (i) before occupancy begins; (ii) upon disapproval of the credit report(s); or (iii) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Agreement.
   B. LANDLORD REPRESENTATIONS: Landlord warrants, that unless otherwise specified in writing, Landlord is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

39. MEDIATION:
   A. Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action.
   B. The following matters are excluded from mediation: (i) an unlawful detainer action; (ii) the filing or enforcement of a mechanic's lien; and (iii) any matter within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provision.
   C. Landlord and Tenant agree to mediate disputes or claims involving Listing Agent, Leasing Agent or property manager ("Broker"), provided Broker shall have agreed to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to such Broker. Any election by Broker to participate in mediation shall not result in Broker being deemed a party to this Agreement.

40. ATTORNEY FEES: In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, except as provided in paragraph 39A.

41. C.A.R. FORM: C.A.R. Form means the specific form referenced or another comparable form agreed to by the parties.

42. OTHER TERMS AND CONDITIONS; SUPPLEMENTS: ☐ Interpreter/Translator Agreement (C.A.R. Form ITA);
   ☐ Keysafe/Lockbox Addendum (C.A.R. Form KLA);   ☐ Lead-Based Paint and Lead-Based Paint Hazards Disclosure (C.A.R. Form FLD);
   ☐ Landlord in Default Addendum (C.A.R. Form LID)

   The following ATTACHED supplements are incorporated in this Agreement:

43. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it, may be extended, amended, modified, altered or changed except in writing. This Agreement is subject to California landlord-tenant law and shall incorporate all changes required by amendment or successors to such law. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

44. AGENCY:
   A. CONFIRMATION: The following agency relationship(s) are hereby confirmed for this transaction:
   Listing Agent (Print firm name)          None             -- J.R.M. Properties --
   Is the agent of (check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.
   Leasing Agent (Print firm name)          None             -- J.R.M. Properties --
   (if not same as Listing Agent) is the agent of (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or
   ☐ both the Tenant and Landlord.
   B. DISCLOSURE: ☐ (If checked): The term of this lease exceeds one year. A disclosure regarding real estate agency relationships (C.A.R. Form AD) has been provided to Landlord and Tenant, who each acknowledge its receipt.

45. ☐ TENANT COMPENSATION TO BROKER: Upon execution of this Agreement, Tenant agrees to pay compensation to Broker as specified in a separate written agreement between Tenant and Broker.

36b. Check & Correspondence should be mail to:
      Reliable Properties
      6399 Wilshire Blvd. Suite 604
      Los Angeles, CA 90048

Tenant's Initials (          )(          )                    Landlord's Initials (          )(          )

                                                              Reviewed by                Date

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 5 OF 6)
LR REVISED 12/13 (PAGE 5 OF 6)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Gramercy pl

Premises: _____ Date: _____

46. ☐ INTERPRETER/TRANSLATOR: The terms of this Agreement have been interpreted for Tenant into the following language: _____ . Landlord and Tenant acknowledge receipt of the attached Interpreter/translator agreement (C.A.R. Form ITA).

47. FOREIGN LANGUAGE NEGOTIATION: If this Agreement has been negotiated by Landlord and Tenant primarily in Spanish, Chinese, Tagalog, Korean or Vietnamese, pursuant to the California Civil Code, Tenant shall be provided a translation of this Agreement in the language used for the negotiation.

48. OWNER COMPENSATION TO BROKER: Upon execution of this Agreement, Owner agrees to pay compensation to Broker as specified in a separate written agreement between Owner and Broker (C.A.R. Form LCA).

49. RECEIPT: If specified in paragraph 5, Landlord or Broker, acknowledges receipt of move-in funds.

> Landlord and Tenant acknowledge and agree Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance and other desired assistance from appropriate professionals.

Tenant agrees to rent the Premises on the above terms and conditions.

Tenant _____ Date 3/7/15
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Tenant _____ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

☐ GUARANTEE: In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Landlord agrees to rent the Premises on the above terms and conditions.
Landlord _____ Date 3/7/15  Landlord _____ Date _____
Address 6399 WILSHIRE BL #604 LA CA 90048
Telephone _____ Fax _____ E-mail _____

> REAL ESTATE BROKERS:
> A. Real estate brokers who are not also Landlord under this Agreement are not parties to the Agreement between Landlord and Tenant.
> B. Agency relationships are confirmed in paragraph 44.
> C. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Leasing Firm) and Cooperating Broker agrees to accept: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement between Listing Broker and Cooperating Broker.

Real Estate Broker (Listing Firm) J.R.M Properties _____ BRE Lic. # 01836011
By (Agent) _____ BRE Lic. # _____ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Leasing Firm) J.R.M Properties _____ BRE Lic. # _____
By (Agent) _____ BRE Lic. # 01836011 Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

© 2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

LR REVISED 12/13 (PAGE 6 OF 6)

RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 6 OF 6)